## J. McHugh v. Mrs. Mary Stewart—W. Bragg et al., Opponents, S. Stewart, Appellant.

The tacit mortgage of the minor on the property of his tutor can only be enforced for the balance which will appear to be due him, upon an account of tutorship rendered or ascertained by a judgment obtained against his tutor in default of rendition of account.

The tutor himself cannot assert this tacit mortgage upon property which was affected by it in his hands, and which he has alienated or incumbered in favor of third persons: *non constat*, that at the termination of the tutorship he will owe the minor anything, and even if this should be the case, the latter would have to proceed first against such property as his tutor might then be possessed of, the law reserving to the third possessors of property sold by the tutor the right of discussion.

APPEAL from the Fifth District Court of New Orleans, *Augustin*, J. *F. Haynes* and *Collins & Wooldridge*, for plaintiff. *Singleton* and *Clack*, for *S. Stewart*, appellant.

BUCHANAN, J. Defendant, a married woman, mortgaged a house and lot to *Samuel Stewart*, for the security of money borrowed by her from said *Stewart*, after being thereto authorized by a judgment of the Fourth District Court of New Orleans, in conformity to the Act of 1855, No. 200, page 254 of the Session Acts. In her petition, presented to the Fourth District Court, she alleged that the proposed loan was "for her entire benefit, and to finish a valuable building on said lot, and is in no way for the use or benefit of her husband or children, who have no claim on her, but is truly for the purposes above stated." In the act of mortgage, to which her husband, *James Stewart*, was a party, the defendant declared that "under the authorization of the honorable *M. M. Reynolds*, Judge of the Fourth District Court of New Orleans, whose certificate to that effect is hereunto annexed, she has borrowed the sum of twelve hundred dollars from *Samuel Stewart*, of this city, for the uses and purposes set forth in said certificate." The act of mortgage also recites an annexed certificate of the Recorder of Mortgages of New Orleans, of even date, certifying that there existed no mortgages in the name of the mortgagor, and recorded against the property mortgaged, except one in favor of her vendor, *John McHugh*, and one in favor of the mortgagee, *Samuel Stewart*; which latter the mortgagor bound herself to have cancelled immediately.

The present suit was instituted by the vendor of the property, by executory process, upon a protested note, being one of those given by defendant for the price. At the Sheriff's sale under this executory process, on the 7th October, 1856, *Samuel Stewart* became the purchaser of the property, for seventeen hundred dollars cash; out of which, after satisfying the execution of the vendor and other privileges on the property, he retained in his hands, as appears by the Sheriff's return, five hundred and eighty-seven dollars and seventy-six cents, in part satisfaction of his mortgage debt.

The defendant now appears in court in the capacity of natural tutrix of her four minor children, issue of her first marriage, with *Patrick Fitzpatrick*, and claims, by way of third opposition, to take the proceeds of the Sheriff's sale, in preference to the said *Samuel Stewart*, upon the following allegations:

"That said lot, with the improvements thereon, was the only immovable owned by petitioner, and is subject to the tacit mortgage existing in favor of

McHUGH
*v.*
STEWART.

petitioner's said minor children, and which amounts to the sum of six hundred and fifty-nine dollars and eighty-seven cents, which sum was received for said minors from the *Succession of John J. Fitzpatrick*, by petitioner in her said capacity, and was in fact used in the purchase and improvement of said property. That petitioner in her said capacity is entitled to receive the said amount of $659 87 out of the proceeds of said property, in satisfaction of such mortgage, in preference to said *Samuel Stewart*, who alleges a better right, but who is not entitled to receive said surplus."

In support of these allegations the defendant and third opponent has offered in evidence letters of natural tutorship, granted to her as widow of *Patrick Fitzpatrick*, on the 5th December, 1848; also the following document extracted from the *mortuaria* of *John J. Fitzpatrick*, in the Fourth District Court of New Orleans:

"Received, New Orleans, March 7th, 1854, from *Mrs. Mary McHugh*, administratrix of the estate of *John J. Fitzpatrick*, the sum of six hundred and fifty-nine 87-100 dollars, in full of the claim of and portion inherited by *Daniel, Theresa, Edward* and *John Fitzpatrick*, as per judgment of court in above succession in Fourth District.

[Signed]                      MARY FITZPATRICK, tutrix."

Apart from the palpable bad faith on the part of the defendant and third opponent, involved in the assertion of this claim, it is evident that it cannot be listened to, because it inverts the legal position of parties, and anticipates an account of tutorship. In substance, we have here the spectacle of the debtor claiming to be the recipient of a fund, as if she were the creditor. Minors certainly have, by law, a tacit mortgage upon the property of their tutors from the day of the appointment of such tutors, for the security of their faithful administration; C. C. 354, 3282. But this tacit mortgage, like other mortgages, is to be enforced by the mortgagee, not by the mortgagor. It can only be enforced by the minor, and for the balance which will appear to be due him upon an account of tutorship rendered or ascertained by a judgment obtained against his tutor in default of rendition of account; *Holmes* v. *Hemkin*, 6 Rob. 51. Now, it may very well happen that when the four minors *Fitzpatrick* shall have attained the age of majority their tutrix shall owe them nothing; that the expenses of their education, and the other legal charges against them, or the payment of the debts of their father, may have consumed the whole of the not very large sum received by their tutrix for their account, on the 7th March, 1854. Indeed, it is proved by defendant's own oath that she expended one hundred and seventy dollars in lawyers' fees, in the litigation in the Fourth District Court, which resulted in the judgment mentioned in her receipt.

Or it may be that the minors *Fitzpatrick*, or some of them, may die before attaining the age of majority, and that the whole or a portion of the indebtedness of their mother and tutrix, by reason of the receipt in question, may be thus extinguished by confusion. No account of tutorship has yet been rendered, nor could any have been rendered, and in the absence of such account it is impossible to assume that the whole amount received by the tutrix as aforesaid, is due to her children without any deduction whatever. And suppose it were paid at this time to the tutrix, would this property, in the hands of the purchaser, be thereby relieved from the minors' tacit mortgage? That would be very doubtful, to say the least. For the payment to the tutrix would amount to nothing more than a second receipt by her of the same sum, for account of

McHugh<br>v.<br>Stewart.

her minor children, and for which she would clearly be still liable to them. This last consideration alone seems to demonstrate the inadmissibility of this claim at this time, and in this form. When the minors shall have attained the age of majority, or shall be emancipated by marriage, or when the tutrix shall be from any other cause compelled to account, or when a judgment shall have been obtained against her, or against her succession, in default of an account; and the claims of her children against her shall have been liquidated, and the balance in their favor ascertained, the recourse of the children will be, first, against the property then in possession of their mother and tutrix; and it may be that she will then have property sufficient to satisfy their claims. But if not, then the minors will have their recourse against the third possessors of property alienated by their mother since the date of her appointment as tutrix; the right of discussion being reserved by law to those third possessors, as against the tutrix, (C. C. 3366, C. P. 715,) a right which seems entirely irreconcilable with the pretensions now set up by that tutrix to make a third possessor relieve her of an anticipated responsibility.

We understand the argument of the appellant, *Samuel Stewart*, in this court, as conceding the right of priority of the appellees, *Aitkins, Moodie, Dorand, Bragg* and *Pike*, for the amounts allowed them respectively, by the judgment appealed from.

It is, therefore, adjudged and decreed, that the judgment of the District Court, as to the appellee, *Mary Stewart*, tutrix, be reversed; that the third opposition of the said *Mary Stewart* herein be dismissed without prejudice to the rights of the minors, if any they have, in the premises, to be exercised at the proper time; that as to the appellees, *Aitkens, Moodie, Dorand, Bragg* and *Pike*, the judgment be affirmed; that the costs of the opposition of *Mrs. Mary Stewart*, tutrix, in the District Court, be paid by the said *Mrs. Stewart;* and that the costs of appeal be paid, one-half by *Mrs. Stewart*, and one-half by the appellant, *Samuel Stewart.*