No. 882.

Elizabeth Gibbs et al. vs. Joseph A. Lum & Co.

A minor can not sue his tutor for what may be due him by the latter, nor sue to subject to his claims his tutor's property, during the existence of the tutorship.
An heir who has attained majority can not subject any part of his tutor's property to the legal mortgage he may have on it, until he has first obtained a judgment of liquidation and settlement of his claims against the tutor.
The probate, and not the district court of the parish, has jurisdiction of suits by heirs against their tutors for settlement of tutorship affairs.

APPEAL from the Eighth Judicial District Court, parish of St. Landry. *Morgan,* J.

*Martel & Hudspeth,* for plaintiffs and appellees.

*Lewis & Brother,* for defendants.

ON MOTION TO DISMISS.

The opinion of the court was delivered by

Morgan, J. An appeal was granted in this case on motion of defend-

ants, upon their furnishing "bond in the sum of one hundred and fifty dollars if for a devolutive appeal, and according to law if suspensive."

Motion is made to dismiss the appeal on the ground that the bond furnished is not such a bond as the law requires.

The bond is as follows:

"Know all men by these presents that we, ———, as principal, and Thomas H. Lewis, as security, are held and firmly bound unto ———, clerk of the district court in and for the parish of St. Landry, his heirs, executors, administrators or successors, in the sum of ——— dollars, for the payment whereof we bind ourselves, our heirs, executors, and administrators firmly by these presents.

"Dated on the twentieth day of February, 1875."

"Whereas, the above-bounden ——— appeal from a certain final judgment rendered against them in the district court in and for the parish of St. Landry, in favor of ———, in suit No. 12,262 of the docket of said court, entitled 'Elizabeth Gibbs, in her own right, et al. vs. J. A. Lum & Co.,' now, therefore, the condition of the above obligation is such that if the said ——— shall prosecute this ——— appeal and shall satisfy whatever judgment may be rendered against ———, or if the same shall be satisfied by the proceeds of the sale of ——— estate, real or personal; if ——— be cast in the appeal, then in that case the above obligation to be null and void, otherwise the said security shall be liable in ——— place.

"Clerk's office, parish of St. Landry.

"(Signed)           THOMAS H. LEWIS,

"Attorney in fact for J. A. Lum & Co.

"(Signed)           THOMAS H. LEWIS, Security."

The judgment was signed on the twentieth of February, and the bond was given on the same day. It must be considered with reference to the order of appeal, and must be taken as a bond for a suspensive appeal.

The motion to dismiss is therefore denied.

---

## ON THE MERITS.

The opinion of the court was delivered by

MORGAN, J. Joseph Gibbs, Sr., owed Robert Henderson fifteen hundred dollars. To secure this indebtedness, Gibbs, on the twelfth of February, 1857, mortgaged a certain piece of property situated in the town of Opelousas. Robert Henderson died. His estate was inherited by his father, William Henderson. Forming part of his inheritance was the above-named indebtedness.

William Henderson died. He left to the minor children of Joseph Gibbs and to his wife, Bridget M. Carroll, the debt due by Joseph Gibbs. He appointed Joseph Gibbs his executor.

Mrs. Gibbs died on the twenty-second of February, 1864, leaving two minor children. She was in community with her husband. Her estate consisted in her interest in the community which existed between her husband and herself. The community owed no debts. On the second of February, 1866, Joseph Gibbs was appointed natural tutor to his minor children. As natural tutor he retained in his possession the property which composed the community which existed between himself and his wife and administered the same.

An abstract of the inventory of his wife's property was recorded in the mortgage record of the parish of St. Landry, the parish of domicile, prior to the first of January, 1870, to wit: on the ninth of September, 1869.

William Gibbs died without issue prior to the death of his mother. Consequently, his estate went one half to his father and mother and one half to his brothers and sister.

The mortgage executed by Joseph Gibbs in favor of Robert Henderson on the twelfth of February, 1857, has never been reinscribed.

On the twelfth of June, 1857, Joseph Gibbs executed a note for one thousand dollars, payable twelve months after date, to J. A. Lum & Co. On August, 1, 1857, Gibbs, to secure payment of this note, mortgaged all his property, including that upon which the Henderson mortgage bore. In addition to the note for one thousand dollars, Lum & Co. held his note for $172 35, dated June 1, 1858, payable on demand. This note was not secured by mortgage.

On the nineteenth of January, 1866, Lum & Co. instituted suit on these notes, and prayed for a foreclosure of the mortgage. Gibbs confessed judgment. The judgment was recorded on the first of March, 1867.

On the twenty-ninth of July, 1872, execution issued. Under the execution the sheriff seized and offered for sale the property which had been mortgaged to Henderson. He also seized and offered for sale the property which belonged to the community which had existed between Jos. Gibbs and his wife.

Elizabeth Gibbs, in her own right, she being now a major, and Jos. Gibbs, tutor to Joseph Gibbs, Jr., filed a third opposition, in which they claim the proceeds of the property then about to be sold, to the amount of $3625, with interest on $1500 from July 12, 1856, at eight per cent per annum, and with interest at five per cent per annum on $2125 from the twenty-second of February, 1864, as belonging to them.

Their opposition is based upon the facts above set forth.

At the first offering the property was not sold. At the second adjudication it was sold on a twelve-months bond for $2350.

Lum & Co., the defendants herein, pleaded—

First—That plaintiffs have no claim on the property seized. They admit that they once had a conventional mortgage on a part of it (that portion which was mortgaged to Henderson), but they say that this mortgage was not reinscribed until the first of March, 1867, and that it is therefore prescribed.

Second—That the property of Mrs. Gibbs was in the possession of Joseph Gibbs at the time it was seized, and that the recording of the abstract of the inventory of the estate left by Mrs. Gibbs conferred no rights upon Gibbs's property.

After answering, Lum & Co. excepted to the petition, because "Joseph Gibbs, tutor, has never rendered an account of the tutorship, and that until his account was rendered the mortgage claim of plaintiffs, if any, could not be ascertained." This exception was cumulated and tried with the merits.

Then Elizabeth Gibbs amended her petition, pleading that Lum & Co.'s claim was prescribed at the time they instituted suit, but that Gibbs, with intent to defraud her and her co-heir, in collusion with Lum & Co., confessed judgment; that at the time the judgment was confessed she was a minor; and that her interests could not be prejudiced by the illegal act of her tutor.

R. H. Littell, under-tutor to the minor, Joseph Gibbs, intervened and set up the same plea.

To both these last appearances Lum & Co. excepted upon the grounds:

First—That their judgment could not be attacked collaterally; and

Second—That plaintiff and intervenor, claiming proceeds of a sale in execution of the defendants' judgment, are precluded from contesting the regularity and validity of the sale in any way whatever.

The exception was overruled, and both amendment and intervention allowed.

There was judgment sustaining the plaintiffs' opposition in so far as related to their claim for fifteen hundred dollars on the Henderson mortgage, less one fourth of the share of the deceased minor.

There was error in the ruling of the judge on the exceptions to the amendment and the intervention. A judgment can not be attacked collaterally. Neither can a party claim the proceeds of a sale resulting from a judgment and at the same time say the judgment is a nullity. We are thus spared the necessity of inquiring as to the verity of the charges made by the children that their father has conspired and colluded with a stranger to defraud them of their rights. The debt due by Joseph Gibbs to Robert Henderson, contracted during his marriage, was a community debt; so was the debt due by Gibbs to Lum & Co.

The donation of the Henderson debt to Gibbs's children placed their
34

Elizabeth Gibbs vs. Lum & Co.

father and mother in the same position toward them that they were in toward Henderson. In other words, it was the debt to Henderson due to Gibbs's children. In this view it must be regarded in the same light that it would have been if the donation had been made of a debt due by a third person, secured by mortgage; and the same rule would apply with regard to the prescription of the mortgage. Understand that we are treating of a conventional mortgage, not debt. The debt may exist, and the mortgage be perempted. There is no difference between a conventional mortgage in favor of a minor and a conventional mortgage in favor of a major. Both are governed by the same rules, and both are prescribed by the same law. A mortgage, not reinscribed, held by a major, is prescribed in ten years. It is prescribed against a minor in the same time.

The mortgage granted to Henderson, through whom the plaintiffs claim, was recorded on the tenth of January, 1857. It has never been reinscribed. This suit was instituted in September, 1872. At that time, under the conclusion expressed above, the mortgage was perempted.

Lum's mortgage was recorded in August, 1857. Judgment was rendered upon it on the first of March, 1867. The judgment was recorded. From the date of the recording of the judgment it became a judicial mortgage. When execution issued the original mortgage was perempted. But the judicial mortgage took the place of the conventional mortgage, and the judicial mortgage was in force when the *fieri facias* issued. But the opponents contend that when the judgment was rendered the note which was secured by mortgage, and the one which was not, were prescribed, and that as the notes were prescribed, therefore no judgment should have been rendered upon them. If prescription had been invoked, perhaps it would have been fatal to the plaintiffs' claim. Prescription is a personal plea. It may be waived, expressly or tacitly. Here there was a confession of judgment. It was, therefore, necessarily waived. It is, however, contended that the waiver could not be made to the prejudice of the rights of third parties. In the first place, no rights of third parties were prejudiced, for the third parties here were the representatives of Henderson, and Henderson's mortgage was perempted before the confession of judgment was given. In the next place, the defendant in that suit was authorized to waive prescription. The debt for which he was sued was a community debt. As such he controlled it. The precise point was lately decided in a case recently decided in New Orleans, the title of which now escapes our memory.

The conclusion to which we have come upon the merits renders it unnecessary that we should express any opinion as to the exception which the defendant took to the proceeding.

It is therefore ordered, adjudged, and decreed that the judgment of

the district court be avoided, annulled, and reversed, and that the plaintiffs' third opposition be dismissed, the costs in both courts to be paid by them.

---

## ON REHEARING.

The opinion of the court was delivered by

SPENCER, J. Our predecessors granted a rehearing in this cause, at the June term of 1876, on application of plaintiffs.

We do not think the rehearing extends to the decision on the motion to dismiss. But, if it does, we think that it is correct, and ought not to be disturbed.

Most of the facts material to the case are stated in the former opinion of this court, and need not be again recapitulated.

The defendants excepted to the third opposition of plaintiffs on the ground that the opponents could not proceed to enforce their claims and mortgages against their tutor or his property until the amounts due them had been ascertained and liquidated on final account of the tutorship. It seems that one of the opponents, Elizabeth Gibbs, had attained majority, but the other, Joseph Gibbs, Jr., was a minor still at the date of filing this suit. It is well settled, and, indeed, elementary, that a minor can not, *pending the tutorship*, execute his claims against his tutor; that such demands become executory only at the expiration of the tutorship. Being under tutorship, any moneys recovered would of necessity go immediately back into the hands of the tutor, who would thus as it were have money taken out of one pocket and immediately put back into another. He would be enforcing the collection of a debt from himself, and the very act of paying the debt would, instead of extinguishing it, give it life anew.

This court well said in 12 An. 361 : "It may well happen that when the minors attain majority the tutor shall owe them nothing ; that all may have been consumed in payment of debts, expenses of education, etc.; or it may be that the minor may die before attaining majority, and that the whole, or a part of the indebtedness of the tutor, may be thus extinguished by confession.

"When the minors shall have attained the age of majority, or shall be emancipated by marriage, or when the tutrix shall be from any other cause compelled to account, and the claims of her children against her shall have been liquidated, and the balance in their favor ascertained, the recourse of the children will be, first, against the property then in possession of their mother and tutrix, and it may be that she will have property sufficient to satisfy their claims. But if not, then the minors will

have their recourse against the third possessors of property alienated by their mother since the date of her appointment as tutrix."

To allow the claims of the minor to be executed against his tutor's property, pending the tutorship, would be to open the door to great frauds on minors, and put it in the power of the tutor to destroy the security which the law so zealously preserves for the minor's benefit; for all the tutor would have to do would be to enforce or have enforced against himself the claims of his ward, and then pocket the proceeds of the sale of his own property so sold under the minor's claims.

These views are, we think, conclusive against the right of the minor, Joseph Gibbs, Jr., to intervene and claim any part of the proceeds of the property sold in this case.

As to Elizabeth, having attained her majority, she stands in a somewhat different position. But we think that until she has, by proper proceeding in the probate court, ascertained and liquidated, contradictorily with her tutor, her rights and claims against him, she is not in position to enforce them. It is manifest that liquidation can not be had in this case before the district court, because the proper parties are not before it. Her demands must be established against her tutor and father. He must, therefore, be a party defendant, and there must be proper pleadings to serve as the basis of a judgment. In this case her tutor is not a party to this suit. The tutor of Joseph Gibbs, Jr., or rather Joseph Gibbs, Jr., by his tutor, is a co-plaintiff with Elizabeth. There is, and can manifestly be, no proper issue for settling her claims against her tutor. Again, the district court could not take jurisdiction of a demand by a minor against his tutor for liquidation of the affairs of the tutorship. In the case before us, it appears in evidence that Elizabeth Gibbs has commenced in the parish court, and that there is now pending therein, a suit against her tutor for settlement of his account of tutorship. That court is certainly the proper forum for such a contest, as it has exclusive probate jurisdiction.

The law manifestly did not vest both the district and parish courts with such jurisdiction, and such an interpretation would lead to endless confusion and conflicts of jurisdiction, since in this very case, where the district court has adjudged plaintiffs to be large creditors of their tutor, the parish court may render a very different judgment. We, therefore, think that so far as relates to any claims of opponents, under their legal mortgage, their demands should be dismissed, reserving to them their right to pursue hereafter such recourse on the property sold as the law permits. It is, we think, indisputable that they have preserved by proper registry a legal mortgage upon the property of their tutor to the extent, at least, of $4250.

The law prior to January 1, 1870, gave them a legal tacit mortgage

without registry. The act of 1869 provided that this legal mortgage could be preserved by recording " an abstract of the inventory," and that its recordation " shall operate a mortgage on all present and future property of the tutors, *for all their acts*, until they are relieved," etc.

The conventional mortgage of Lum & Co. having perempted, their judicial mortgage is inferior to this legal mortgage, and a sale under the Lum debt did not divest the minors' mortgage, and the property sold is still liable for such amount as on final settlement may be due them.

So far as concerns the opponents' claim under the conventional mortgage to Henderson, their rights are clearly lost for want of reinscription; but it is manifest that, as this loss is the direct result of the negligence or fraud of their tutor, they are his creditors for its value, and that their claim in this regard is protected and preserved by their legal mortgage, which secures them against " all acts" of maladministration of their tutor. It will, therefore, be a proper charge against the tutor in the settlement of accounts, but can not be enforced now, and in this case, as a conventional mortgage right.

It is proper here to remark that, the opponents' rights not being affected by the sale under the Lum judgment, we do not see that they have any interest in contesting it. But if they had, we do not think it could be successfully done. A debt barred by prescription still exists until it is pleaded ; and even afterward there is always a natural obligation remaining which is a good consideration for a new promise to pay. It is not necessary for us, under the view we have taken, nor, indeed, under the facts of this case, to express any opinion upon the proposition announced by our predecessors in this case, that the surviving husband may after the death of his wife and dissolution of the community revive by acknowledgment a debt already prescribed, so as to make it exigible upon the assets of the community, including the wife's share thereof, since, as we understand the record, only the husband's interest in the community property was sold. And whether so or not, the minors, not being parties to the sale, would not be bound by it if their share of the community was not legally liable, upon which, as stated, we express no opinion.

It suffices for the purposes of this case, that the Lum judgment was valid against Joseph Gibbs, Sr., and this seems to be conceded.

It is therefore ordered, adjudged, and decreed that the judgment of this court heretofore rendered be so amended as to reserve any rights opponents may have under their legal mortgage to hereafter pursue by hypothecary action the property sold under execution in case of J. A. Lum & Co. vs. Joseph Gibbs; Sr., and that in other respects said decree remain undisturbed.