*139 Statement of the Case.
NICHOLLS, J.
Plaintiff alleged that C. C. Crosley died in the parish of Ouachita, on the 22d of September, 1888, leaving a widow, Mrs. Kate Crosley, and two minor children, issue of the marriage with the deceased, Stella Crosley (petitioner) and Martha Clayton Crosley. On January 10, 1889, Mrs. Kate Crosley was appointed and confirmed natural tutrix of her children. On the 26th of January, 1889, an inventory of C. C. Crosley’s succession was filed in the clerk’s office, amounting to $20,946, a certified copy of which was recorded in the mortgage book. All of the property in the inventory was the separate property of C. C. Crosley, having been inherited by him from liis father, J. P. Cro'sley, but a large amount of property belonging to C. C. Crosley and the minor heirs was not placed on the inventory. On February 23, 1889¡ Mrs. Kate Crosley qualified as natural tutrix, and L. D. McLain was appointed and qualified as undertutor. That, immediately after qualifying as tutrix, Mrs. Crosley removed to the state of Mississippi, where she resided permanently for many years. That on the 11th of June, 1889, the tutrix executed a comprehensive power of attorney in favor of L. D. McLain, whereby she empowered him to act as tutor in her place and stead, and to administer the estate of said Crosley minors as fully as if she herself were present. That said McLain proceeded to act in said capacity as the substitute of said tutrix, although he was still undertutor and personally interested in many sales and other transactions he made as tutor. He took charge of the valuable plantation belonging to petitioner and her sister, known as “Cottonport Plantation,” which surrounds the town of East Monroe and is very valuable for farming purposes, and he has had exclusive control and possession of said plantation up to the present time, without any order of court or public lease. He conducted and operated said farm in his own name, and shipped all the cotton and other products in his own name for all these years. That on said plantation at the death of C. C. Crosley were 16 head of good mules and horses, 95 head of sheep, wagons, farming utensils, corn, cotton, seed, and a large quantity of other personal property, which said L. D. McLain used in his farming operations or otherwise disposed of in his capacity as substituted tutor, and he is liable for the value of said personal property, to-wit, the sum of $3,000, one-half of which belongs to petitioner, together with 5 per cent per annum interest thereon from date of said power of attorney June 11, 1889. Avers that Mrs. Crosley never acted as tutrix, and never received any of said personal property, nor any of the crops raised on said plantation, nor any of the rents due for the lease and operation of the same; and that said L. D. McLain, individually and as agent and acting tutor of said minors and as undertutor, is personally bound for the value of the rents of said plantation and all the proceeds of real and personal property received by him. That neither said L. D. McLain, agent, nor Mrs. Kate L. Crosley,’ tutrix, has filed any annual account, nor did said undertutor call on the judge to order said account; in fact, the tutrix could not file an account nor statement of the affairs and estate of said minors, because she had nothing to do with said estate nor received any of its funds or property, but intrusted the entire administration to her agent, L. D. McLain, who has not only failed but refused to render any statement of the account of the tutorship of the said minors and his administration thereof. That he has received and holds all their property and funds, and owes for same.
Petitioner represents that she married E. S. Eby on the 18th of December, 1906, and *141 was emancipated by marriage. That notwithstanding this fact and the termination of the tutorship, L. D. McLain continues to hold her property and funds to the present time, and refuses to deliver same to her. That she owns in her own right as one of the heirs of C. C. Crosley an undivided half interest in the Cottonport plantation, lying on the Ouachita river, opposite the city of Monroe, and surrounding the town of West Monroe, containing 784 acres of land, more or less (as shown on the inventory as follows) :
32.97 acres in section 47.
185.66 acres in section 51.
182.09 acres in section 52.
32.25 acres in section 53.
17.74 acres in section 45.
31.45 acres in section 44.
165.37 acres in section 43.
784.49 acres in lot one (1).
All in township 18 north, of range 3 east, a detailed and párticular description of which land is hereto annexed and made part of this petition. That she also owns an undivided half interest in the Orosiey residence, and six acres of land adjoining thereto.
That said L. D. McLain is in actual possession of all said property, and is operating-said plantation and collecting rents for petitioner’s houses two years after the emancipation of petitioner. That said plantation is fully equipped with valuable ginhouse, barns, overseer’s house, and contains between four and five hundred acres of very fertile land, and that same, together with the teams, tools, and other property thereon at the time of said C. C. Crosley’s death, was and is well worth $4,000 per year rent. That L. D. McLain has had possession of and cultivated same for 20 years, and owes $80,000 rent therefor, one-half of which belongs to petitioner, together with 5 per cent, per annum interest on each year’s rent from the end of the year on which it fell due.
That, as well as she can learn from the records, C. C. Orosiey owed no debts at the time of his death, except a judgment in favor of Stubbs & Bussell for $2,500, which was paid and canceled July 28, 1890, and a rent in favor of S. W. Sanders for $440, which fell due March 23, 1889. While tutrix was in Mississippi, L. D. McLain held a family meeting which illegally authorized the mortgage of said plantations to pay the above debts when there was sufficient personal property, note and personal accounts, etc., on hand to pay same. But no mortgage was executed under the advice of said meeting until April 20, 1891, after said debts had been paid by the rents and revenues and proceeds of property sold. That said mortgage was executed more than two years after. said family meeting, and when there was no necessity therefor, without the advice of a family meeting, and without an order from court for said particular mortgage. That it was executed by L. D. McLain, who was agent for the mortgagee and at the same time undertutor and agent for the tutrix, and said mortgage was and is in no manner binding on the said Crosley minors and their property. That at the time of his death C. C. Crosley owned one-sixth interest in certain lots in the town of West Monroe, and this interest was not covered by the inventory of his succession. That the other interests in said lots were owned by Uriah Millsaps, estate of T. F. Millsaps, L. D. McLain and his wife, Mrs. Mattie C. McLain, and that petitioner and her sister inherited that undivided interest of her father, C. C. Crosley. Avers that said L. D. McLain, assuming to act as agent of Mrs. Kate Crosley, tutrix, and for said minors, sold the interest of the minors in many of said lots, which, as near as petitioner has been able *143 to Investigate, include the following sales (describing them).
That in most of this property petitioner and her sister had one-sixth interest, but that in some of it they had one-third interest. That by act of exchange Uriah Mill-saps and the representatives transferred all of their interest in block P, to the representatives of J. P. Crosley, and petitioner and her sister Clayton had a third interest in the property sold to John P. and Jas. R. Henry and that sold to J. L. Russ and Mrs. H. V. Wheatley, in which Uriah Millsaps does not join. They also owned one-third interest in block N, and blocks B and N. Por instance, lot sold to P. Vollman, May 12, 1890, did not belong in any part to Uriah and T. P. Millsaps, and could not be covered by a family meeting called to advise with reference to sale of land owned by Uriah Millsaps et al. This sale was made to Vollman in name, but in reality the sale was made to L. D. McLain, who was both purchaser and seller, and who a few days afterwards bought a half interest from Vollman for $2,500. All the transactions with reference to this lot were pure simulations, and petitioner avers that this lot still belongs in part to her, and that L. D. McLain owes rent therefor from May, 1890, to the present time at the monthly rental of $50. So, also, with the sale of 30 feet of Commerce street, block N, to L. D. McLain, on March 17, 1903, was and is an absolute nullity, and petitioner asks that her interest in said lot be decreed to belong to petitioner. Also lot sold to W. R. Moore June 6, 1890, was really sold to McLain, and is null and void.
That one of the lots on Commerce street sold to the Acme Gardwood Company belonged to L. D. McLain and C. C. Crosley’s heirs. It brought $83.33%, and could not be sold. It still belongs to the minors. The other lot brought $833.33%, of which $277.77 was paid in cash. That for the balance of $555.58 an order of seizure and sale was issued in the name of all the vendors, including the minors, of which L. D. McLain was agent, and said property was bought in at sheriff’s sale in the name of Uriah Millsaps and L. D. McLain for the balance of said debt, and was afterwards sold by them to John T. Haynes for $100. That the purchase of L. D. McLain inured to the benefit of petitioner and her minor sister, and he owes them one-sixth on said $1,000.
That she has been unable to obtain complete - of the sales of West Monroe property. That all of said sales were made by L. D. McLain, and he received the purchase price for the share of petitioner, and owes interest at the legal rate of 5 per cent, from the date of each sale. That it is the purpose and desire of petitioner to ratify all of said sales except those made to L. D. McLain individually or through his partner, P. Vollman, or other persons interposed. That said funds were not reinvested nor placed in bank, nor in any manner accounted for, and said L. D. McLain owes interest at the highest legal rate on same.
The same is true of the sale made to C. A. Cannawghton in 1891 of six acres of land off the southeast corner of Cottonport plantation for $750, which said L. D. McLain received, one-half of which he owes petitioner, with 5 per cent, per annum interest from date of sale. That on August 9, 1904, said L. D. McLain received the sum of $1,090 in cash from the Monroe & Southwestern Railroad Company for right of way expropriated by a jury across Cottonport plantation, one-halt of which he owes petitioner, together with 5 per cent, per annum interest from the date of its receipt by him. That said L. D. McLain sold timber from said Cottonport plantation, including gum logs, pine timber, and cypress poles sold by him to the telephone company, all of which sales amount to $2,- *145 000, one-half of which he owes petitioner, together with 5 per cent, per annum interest from the date of the receipt by him.
That said L. D. McLain caused other sales to be made of the capital of petitioner’s real estate while she was a minor, all of which was without warrant in law and absolutely null and void. That, so far as third persons acting in good faith made purchases at said illegal sales, petitioner desires to ratify them and to claim the purchase price, together with interest thereon from the date it was paid to the said L. D. McLain. But as to property acquired at such sales by or for L. D. McLain, petitioner avers that the said sales were absolute nullities. That an order of sale was illegally obtained in March, 1903, based on a pretended family meeting held many years before the sale was made, and when conditions and necessary reasons for sale had totally changed. It was also made at a time when no legal claim or indebtedness whatever existed against said minors. That under this illegal order, issued without the advice of a family meeting, said L. D. McLain on the 22d of April, 1903, made a pretended sale in the absence of the tutrix, at which certain properties were sold (which she described).
That at said sale the said L. D. McLain, who was undertutor and was entirely conducting said sale, knocked off and adjudicated to his clerk and agent, R. Bruce Frizzell, to wit, certain property (which she described). That on the next day after said sale L. D. McLain caused his said clerk and agent, R. B. Frizzell, to make a deed to said property to L. D. McLain for the expressed consideration of $3,450, whereas nothing was paid by. Frizzell or by L. D. McLain, no purchase was made, no sale was made, but the paper title to said minors’ property was put in the name of L. D. McLain, who was incapable of buying, in glaring violation and disregard of the law. That said property was well worth more than double the amount for which it was pretended to be sold, as was shown by the sales afterwards made by McLain.
He sold a lot to Mrs. Dora Davis for $ 500 00
He sold a lot to O. C. Harris for.... 600 00
He sold a lot to Mrs. Emma Griffin for............................ 1,500 00
He sold two lots to A. A. Gunby for 1,200 00
Making the sales of less than half of said property amount to......... $3,800 00
That she desired to ratify said sales, and claims one-half of said amount, together with 5 per cent, per annum interest from date of its receipt by L. D. McLain. She also claims one-half of the $2,265 and interest for sales to third persons on the 22d of April. On the 25th of May, 1903, the said L. D. McLain caused another sale to be made of the real estate of the said Crosley minors, without any cause or warrant of law to make same, at which illegal and unwarranted sale the following purchases were made: W. M. Parker bought a certain lot in block 2, having a front of 133⅓ feet on Pine street and 130 feet on Cypress street, for $500. John R. Frantom bought a certain lot in block 2, having a front of 88½ feet on Clayton street and running back to Cotton street, and having a front of 186 feet on Cotton street, for $410. At said illegal sale on May 25th L. D. McLain pretended to sell to R. B. Frizzell all the balance of block 2 for $760. That said sale was really to put the title in McLain, who had no right or capacity to bid at said sale, but to whom said R. B. Frizzell, his clerk and agent, made a sale for a pretended price the day after the said sale. That said L. D. McLain acquired no title whatever to said property, but his pretended purchase left the property still vested in said Crosley minors, and petitioner demands that her half thereof be delivered to her. She ratifies the sales made to W. M. Parker and John R. Frantom, and claims one-half of the purchase price, $1,000, together with interest *147 at the legal rate thereon from the date, of its receipt by McLain.
That said L. D. McLain made another illegal sale of the property of the Crosley minors, in which he assumed, without an order of court or anybody’s advice, to exchange with Mrs. Sallie C. Moore a lot of ground on Pine street with 50 feet front for another lot of 35 feet front; avers that said transaction and sale was absolutely null, and made for the individual interest and convenience of said L. I). McLain. She asks to be decreed to be the owner of the lot which L. D. McLain pretended to transfer to Mrs. Moore, and to be put into possession thereof. That, in addition to the interest in the lots in West Monroe above enumerated, the C. C. Crosley heirs own one-third interest in all the lots in South Cottonport or South West Monroe, and a third interest in all the money received by L. D. McLain for sale of lots to H. L. Gregg, R. W. McClendon, and Miss Josephine Mc-Clendon. That said property belonged to Bry Young and J. P. Crosley, and in 1880, while said L. D. McLain was executor of J. P. Crosley’s succession and tutor of the minor, C. C. Crosley, he permitted said property to be sold at tax sale in 1880, and bought same in, together with H. M. Bry. That he could not purchase the interest of J. P. Crosley for himself, and his purchase was for the minor, C. C. Crosley, as to one-third interest which was inherited by your petitioner and her sister; and this petitioner demands the possession of her share in all parts of said property that remain unsold, and her share of the proceeds of all lots sold by L. D. McLain, together with 5 per cent, per annum interest from date of receipt of said proceeds, as shown by the notarial records of Ouachita parish. That in addition to the rents of the plantation which have been set forth, L. D. McLain owes for additional rents of houses situated on said property, to wit:
Eighteen cottages situated in block L on Cypress street and block O and beyond block O on Natchitoches road, each worth $10 per month rent. Two or more houses situated on Natchitoches road beyond Black bayou, each worth $10 per month. Five dwellings situated on Trenton street, all of which rented for at least $100 a month, one-half of which belongs to petitioner as the dwellings of C. C. Crosley during his life by act of donation dated January 23, 1888, recorded in Conveyance Book 29, p. 74. That said L. D. McLain, assuming to act as agent for said Crosley miors, both before and after the emancipation of petitioner, has held possession of all the aforesaid property and has collected rents therefor up to the present time. He has also collected rents on a house formerly situated on the Ouachita river in block N in West Monroe, at the rate of $15 a month for 15 years. Also a house on the river bank between railroad bridge and Wood street, which property and house belong to petitioner and her sister, at the rate of $10 a month. That said L. D. McLain, without right or law, included in the lumber yard of the sawmill which belongs to him individually a large square of ground belonging to the C. C. Crosley heirs, which he has used and rented for at least $300 a year for 20 years, together with 5 per cent, per annum interest from date of receipt of each year’s rent by L. D. McLain. He has also rented the cotton yard in West Monroe for between $300 and $400 per year for the past 15 years, one-sixth of which belongs to the C. C. Crosley heirs, together with 5 peícent. per annum interest from the date of each payment. That said L. D. McLain received other rent from houses on said propperty which petitioner is unable at present to itemize. That said L. D. McLain up to the present time has received at least $65,000 in rent from houses and other property other than the plantation belonging to the C. C. Crosley heirs, and that one-half of said rent, together with 5 per cent, per annum interest *149 from the date of each receipt, is due to petititioner by said L. D. McLain.
That said L. D. McLain had said plantation assessed to himself as agent, and paid the taxes on same, but that the taxes and repairs paid for by him did not equal the interest due petitioner on money collected by him for rent. That it wa§ the plain duty of L. D. McLain to file or have filed an annual account of the administration of said minor’s estate, and that it was his duty to lease said plantation at public auction to the highest bidder for cash, and that it was his duty to place in bank at interest all funds collected for rents and from sales of said minor's property as fast as received by him, and that it was his duty as soon as the tutorship of petitioner terminated to turn over to her her estate and pay over all funds in his hands, and not force her to employ an attorney to recover her estate and a settlement of her rights.
She prayed that L. D. McLain and Mrs. Kate L. Crosley, individually and as natural tutrix, be cited. That on final trial she be decreed to be one of the heirs of C. C. Crosley, deceased, and as such the owner of an undivided half interest in Cottonport plantation hereinabove particularly described, and all the improvements thereon situated, including all the lots in blocks O, W, and 4, purchased by L. D. McLain on April 22 and-May 25, 1903, through his representative, R. B. Frizzell. That she be declared the owner of all of said property, and be put in possession thereof by decree of the court.
That there be judgment decreeing petitioner the owner of one-half interest in the Crosley residence and six acres adjoining thereto, and a one-sixth interest in and to all lots in block F and L and N bought by L. D. McLain during the tutorship of the C. C. Crosley minors, and a third interest in lot in block B of West Monroe sold May 12,-1890, to F. Yoilman, representative of L. D. McLain. That all said sales made to L. D. McLain or to some person-interposed for him' be decreed absolute nullities, and that the-sales made to R. B. Frizzell, the representative of L. D. McLain, of said minors’ property, on April 22, 1903, and May 25, 1903, be-decreed absolute nullities. OJhat she have-judgment against- said L. D. McLain for $40,000 for one-half the value of the rents- and revenues of said plantation for 20 years, together with 5 per cent, per annum interest from the date when said rents fell due. That she have further judgment for $32,500 as her one-half of rents collected from said Crosley houses, cottages, and yards. That she have judgment for one-half of $1,690.50 and $1,500 and $750 for property sold as above set forth; also, judgment for $2,715 for petitioner’s share in proceeds of lots sold in West Monroe to effect a partition, with 5 per cent, per annum interest on the proceeds from date of sales as above set forth; also judgment for $1,000, and further judgment on $300 for petitioner’s share in rents of cotton yard and lumber yard as above set forth; also judgment for one-half of $7,079.60, being proceeds for sales of property made April 22 -and May 25, 1903, to other persons than L. D. McLain or R. B. Frizzell, with interest from day of sale.
That she have judgment for $2,000 for petitioner’s interest in timber sold by L. D, McLain from Crosley property, and the further sum of $1,000 for personal property disposed of on said plantation. Making a total of $87,724.80, for which petitioner asks and prays for judgment -against said L. D. McLain, together with 5 per cent, per annum interest from the date the various amounts came into his hands. She further prays that her interest in the lots in South Cotton-port still held by L. D. McLain, and her interest in proceeds of sales made by L. D. McLain south of the railroad, be recognized, and her interest in all lots in West Monroe owned in indivisión with Uriah Millsaps et al. be *151 -decreed, and she be put in possession of the same. Petitioner reserves the right to amend and make additions to above statement of her property, and claims and prays for equitable and general relief.
On September 21, 1908, plaintiff, with leave -of court, filed an amended petition in which she alleged that the said L. D. McLain caused the said tutrix to execute a $4,460 mortgage on Cottonport plantation, belonging to the minor heirs of C. C. Orosley as aforesaid, in favor of Sam Wolf, which is -alleged to bo given for money “loaned and advanced” and owing by said minors to Sam Wolf, as will more fully appear by reference to said mortgage recorded in Mortgage Book 28, p. 558, of the records of Ouachita parish. That said mortgage was executed without authority in law, and that it was unnecessary and injurious to said minors and their estate. That no money was loaned by them, and no indebtedness was due to said Wolf by said estate. That said money was borrowed by L. D. McLain for his own individual use, interest, and advantage, and the mortgage given therefor on petitioner's property was illegal, null, and void. That the pretended family meeting of January 29, 1897, was irregular and illegal in every particular, held in the interest and at the instance of said McLain, and in no manner binding on petitioner or her property. That the revenues of petitioner’s property were sufficient and ample to extinguish and discharge all indebtedness whatever against her estate, and the attempt to mortgage and burden her property was wrongful and void; and the tutrix had forfeited the tutorship long prior thereto. That J. W. Hill retransferred the lot in block A of West Monroe sold by him to L. D. McLain et al. to Uriah Millsaps and L. D.- McLain as alleged in the original petition, and that said vendees hold said lot for the respective minors who were interested .with them in the ownership thereof. That said J. W. Hill has paid rent on the said lot at the rate of $250 a year, one-third of which is due to petitioner by L. D. McLain, who has received said rent and converted same to his own use without any right whatsoever.
That in 1901 the ginhouse on said Cotton-port plantation was consumed by fire, and L. D. McLain collected and received the insurance thereon, amounting to $4,000 or more, and he was never authorized, so far as petitioners can discover, to reinvest same. He therefore owes for said insurance, together with 5 per cent, per annum interest thereon from the date of its collection.
That the claim for $4,000 in the original petition per year rent for the use and cultivation and lease of said Cottonport plantation by said L. D. McLain in his own name and for his own interest, without any authority or law, is a just and fair claim, and the yearly lease of said plantation and its equipments has been and is well worth said sum and amount, and petitioner reiterates said claim and demand. But in the event the court should hold that L. D. McLain is not bound for that amount of rent, then in the alternative petitioners aver that said L. D. McLain received large crops from said plantation, which were principally worked on the share system, and averred that the share of the crop received by L. D. McLain and sold by him for his own account each year largely exceeded $4,000, one-half of which belongs to petitioner.
That he made large profits out of running and furnishing said plantation, both before and after petitioner was emancipated by marriage, and by judgment of the court, and by her majority, which she obtained in 1907. That said L. D. McLain had no right or authority whatever in law, and no authority from any one, to occupy and cultivate said plantation as he has done. That he has occupied and occupies the status of an inter-meddler or negotiorum, and justly owos peti *153 tioner one-half of all the crops raised or which could have been raised on said Cottonport plantation. That the said lands were rentable and customarily rented for one-fourth of the cotton and cotton seed and one-third of the corn produced. That on these terms the value of the rent of the plantation would average more than $4,000 yearly up to and including the present year. That petitioner is entitled to receive in full one-half of all crops of all sorts raised and now growing on said plantation duting the present year of 1908, and she is entitled to have same delivered to her, together with her interest in said land and all other property inherited by petitioner which is illegally detained from her by said L. D. McLain.
In view of the premises, plaintiffs pray to be allowed to file this amended petition; that same be served on defendants; that on final trial petitioner Mrs. Stella Crosley Eby have judgment as prayed for in her original petition, and also that the pretended act of mortgage of March 9, 1897, and in favor of Sam Wolf, be decreed to be absolutely null and void and in no manner binding on petitioner; that the retransfer of the lot to McLain by J. W. Hill be decreed to be for petitioner’s benefit, and that she be decreed to own an interest in said lot, and have judgment against L. D. McLain for her share of the rents of said lots, with interest thereon from the date of the receipt of said rents by McLain; that petitioner have judgment for one-half of the insurance money received by L. D. McLain in 1901 for the ginhouse burned on said plantation, together with legal interest thereon.
Petitioners further pray in the alternative, and in the event that it be decided that defendant, McLain, is not liable for $4,000 per year rent for the Cottonport plantation from January 1, 1889, until the present time, that petitioner be decreed to be entitled to one-half of the value of all the crops raised on said plantation,- including the crops of all sorts now on said plantation; that she have-judgment against said L. D. McLain for one-half of the crops raised on said Cottonport plantation and sold by him, together with 5-per cent, per annum interest from date of sale by him, and judgment against L. D. McLain decreeing petitioner to be the owner and entitled to possession of one-half the crops now on said place, and ordering him to deliver same to petitioner, and in the event he disposes of or parts with any part of said crops during the pendency of this suit that he be-condemned on final judgment to pay to petitioner the highest market price of said crops-of cotton, cotton seed, corn, peas, potatoes, hay, and all other crops that may be now produced or may be hereafter produced onCottonport. She finally prays for all equitable and general relief.
The defendant, L. D. McLain, excepted to-plaintiff's original petition on the ground that the same was premature, for the reason that no account had been filed by the tutrix of the-minors Crosley, and no proceedings had by the plaintiff looking to or requiring the filing of such account and settlement with her' tutrix, Mrs. Kate Crosley, which accounting must be had before it can be legally ascertained that any injury has resulted to plaintiff or any loss has been sustained by her or any action lie against any person other than for accounting against said tutrix. Mrs. Kate Crosley also excepted that plaintiff’s suit as against her was premature, as no liquidation of plaintiff’s account against her astutrix had been sought or had.
The district court rendered judgment sustaining the exceptions of prematurity filed by defendants, and dismissed plaintiff’s suit as premature. She appeals from that judgment. The exception was tried on the face-of the papers.
Opinion.
Mrs. Kate Crosley was made party to the-suit individually and as natural tutrix, but' *155 no judgment is prayed for against her. She was evidently made a party so that notice he brought home to her of the issues raised between plaintiff and L. D. McLain, and she might have an opportunity of taking such action in the premises as she might deem herself entitled to. Plaintiff refers to the .action she has brought as a petitory action, one involving “property rights,” not derived, originating, or growing out of the mother’s tutorship, which she is entitled to reconvendicate by direct action.
Plaintiff’s counsel urges that this suit is not one for liability^ growing out of a legal tutorship, but for causes and acts entirely outside of the law, and for property that belongs to her before any tutorship began; that the right to sue a “negotiorum gestor” who takes charge of and holds and sells the property of minors without the legal capacity or authority to do so, has been repeatedly recognized and enforced by this court.
Counsel says that his client has no" occasion to call upon the tutrix to account, as she has received nothing to account for, having turned over everything to the undertutor, who has received everything and holds everything; that, if defendant has any claims against the plaintiff, he can set them up as fully in this proceeding as in any other.
Counsel cites, in support of his various contentions: Cambre v. Grabert, 31 La. Ann. 538; Tugwell v. Tugwell, 32 La. Ann. 848; Glascock v. Clark, 33 La. Ann. 585; Heirs of Self v. Taylor, 33 La. Ann. 769; Heirs of Wood v. Nicholls, 33 La. Ann. 745; Succession of Richmond, 35 La. Ann. 858; Heirs of Burney v. Ludeling et al., 41 La. Ann. 627, 632, 6 South. 248; Code Prae. art. 988; Civil Code, arts. 273, 275, 276, 279, 358; Otteri v. Parker, 42 La. Ann. 381, 7 South. 570; Rist v. Hartner, 44 La. Ann. 378, 10 South. 760; Railroad v. Fairex, 46 La. Ann. 1022, 15 South. 421; Le Bleu v. North American Co., 46 La. Ann. 1465, 16 South. 501; Aronstein v. Irvine, 48 La. Ann. 302, 19 South. 131; People’s Bank v. David, 49 La. Ann. 136, 21 South. 174; Aronstein v. Irvine, 49 La. Ann. 1482, 22 South. 405; Parker v. Ricks, 114 La. 942, 38 South. 687; Thompson v. Vance, 110 La. 36, 34 South. 112, and authorities therein cited; Succession of Kidd, 51 La. Ann. 1157, 26 South. 74.
Defendant’s counsel submit in the syllabus to their brief the following propositions, with authorities in support of the same:
(1) An emancipated minor can only sue her tutor for an accounting. Ludowig v. Webber, 35 La. Ann. 579; Gilbert v. Meriam, 2 La. Ann. 160; Succession of Edwards & Wilson, 32 La. Ann. 458; Gibbs v. Lum & Co., 29 La. Ann. 526; Succession of Lalmont, 110 La. 119, 34 South. 298; McHugh v. Stewart, 12 La. Ann. 361.
(2) It is the duty of the tutor to take into his possession all the estate of the minor, to administer it “as a prudent administrator,” and he is responsible for all damages resulting from a bad administration. Civil Code, art. 337; Tutorship of Scarborough, 43 La. Ann. 319, 8 South. 940; In re Hollingsworth’s Heirs, 45 La. Ann. 135, 12 South. 12.
(3) Should the tutor administer through, or intrust property of the minors to, others, he is responsible to the minors for all damages and losses caused to the minors by the acts of such third persons, agents, or lessees. Arseneaux v. Michel, 6 Mart. (N. S.) 695.
(4) The tutor is alone responsible to the minor for the revenues of her property, whether it be leased or cultivated for the minor’s interest. In re Hollingsworth’s Heirs, 45 La. Ann. 134, 12 South. 12; Succession of Lalmont, 110 La. 119, 34 South. 298.
(5) If the tutor cultivate the plantation of the minor, either himself or through agents or managers, the minor may either accept the net revenues, or may demand of the tutor an amount equal to the customary rents of such property. Vance v. Vance, 32 La. Ann. 190; In re Hollingsworth’s Heirs, 45 La. Ann. 134, 12 South. 12; Civ. Code, art. 346.
(6) If the minor accept the fruits or revenues produced by a cultivation of the property, she must pay the costs of such cultivation, and is entitled to collect from the tutor only the net revenue after paying all costs of production.
(7) If the property of the minor is leased to other parties, the tutor is liable to the minor for all rents collected or that should have been collected by a ’’prudent administrator.” Succession of Trosclair, 34 La. Ann. 327; Vance v. Vance, 32 La. Ann. 188.
(8) If the tutor lease the property of the minor, the lessee owes his yearly rents only to his lessor, the tutor, and he in turn ow-os them *157 to, and must account for them to, his ward, the minor. Ludowig v. Webber, 35 La. Ann. 579.
(9) If the tutor,- on tire other hand, attempts to cultivate or manage the property of the minor through an agent or manager or other representative, such agent or manager _ is accountable to the tutor, who alone, with his surety, is responsible to the minor. Barnard v. Coffin, 141 Mass. 37, 6 N. E. 364, 55 Am. Rep. 443; Bradstreet v. Everson, 72 Pa. 124, 13 Am. Rep. 666; Bailie v. Augusta Savings Bank, 95 Ga. 277, 21 S. E. 717, 51 Am. St. Rep. 75; Davis v. King, 66 Conn. 465, 34 Atl. 107, 50 Am. St. Rep. 122.
(10) .The minor cannot collect from other persons on account of the tutorship more than is due to him by the tutor. Succession of Lalmont, 110 La. 119, 34 South. 298; Gibbs v. Lum & Co., 29 La. Ann. 526; McHugh v, Stewart, 12 La. Ann. 361.
(11) “The tutor administers by himself alone.” “He can on his own responsibility act by an attorney in fact,” etc. Civil Code, art. 351.
. (12) The tutor must support, maintain, and •educate the minor “according to his condition and his fortune” out of his revenues, and the minor can collect from his tutor only the excess of his revenues over the amount expended therefrom for his maintenance and education. This balance can only be ascertained by an accounting. Civil Code, art. 350; McHugh v. Stewart, 12 La. Ann. 361; Gibbs v. Lum & Co., 29 La. Ann. 526; Succession of Lalmont, 110 La. 119, 34 South. 298.
(13) The agent or manager of the tutor, while so acting, represents the tutor. For his acts the tutor is responsible to the minor, and the agent could in no event be held liable to the minor beyond the indebtedness of his principal, the tutor.
(14) A subagent employed by the agent with out the consent of- the principal is not privy to the agency, and owes no account to the principal, the agent, who is alone responsible to his principal. Barnard v. Coffin, 141 Mass. 37, 6 N. E. 364, 55 Am. St. Rep. 443; Bailie v. Augusta Savings Bank, 95 Ga. 277, 21 S. E. 717, 51 Am. St. Rep. 75; Bradstreet v. Everson, 72 Pa. 124, 13 Am. Rep. 606.
(15) In contemplation of law the tutor does not owe the minor- anything until settlement -of tutor’s account. Major v. Her Creditors, 46 La. Ann. 367, 15 South. 8.
(16) A petitory action is a contest for ownership or title. It is one brought for the establishment of the plaintiff’s title to property in the adverse possession of the defendant, in order to have the plaintiff decreed the owner, and incidentally to be placed in possession.
(17) The tutor may administer a succession falling to his wards if creditors do not object. In that case his first duty is to liquidate the succession and pay off its debts. He then holds the residue of the property, as tutor, for the benefit of his wards. Molinari v. Fernandez, 2 La. Ann. 553; Succession of Guillbert, 117 La. 371, 41 South. 653.
The usual course pursued by a minor upon reaching his majority to obtain a settlement from his tutor is upon his petition to have issued by the court an order to the tutor to file an account. It is the duty of the tutor in compliance with this order to file his account, in which he charges himself with everything which has come under his administration or for which he might have been responsible, and, on the other hand, charge the minor himself with all expenditures made for his benefit, and setting out all the claims he has against him. If the minor accepts the account, it is after due proceedings approved and homologated; if, on the contrary, he has reason to complain of any part of it, he files an opposition to it, and on the issues so made the rights of parties are fixed by judgment of the court.
This method of proceeding does not cut off from the minor (now of age) the right to bring at once direct action against persons in possession of property which he claims to belong to himself to have his ownership of the same recognized and decreed, together with the fruits and revenues thereof as incidental to said demand. Neither those in possession of the property nor the tutor can limit the remedy of the minor to recourse against the tutor for its value through the action of account. AVe do not understand defendant to deny the correctness of this proposition. This being the case, the judgment of the court dismissing the entire suit was to that extent erroneous.
We do not mean to say that had the court overruled the exception as to claims of that character, and sustained it only to the other claims set out, that that portion of the judgment would have been correct. AVe hold, on the contrary, that the judgment cannot be *159 sustained at all. The rule invoked by defendant that a subagent employed by an agent is responsible alone to the person who employed him, and that the principal must look to his own agent (whether a forced legal agent or a conventional agent) for any losses he may have sustained in the administration of his property, has no application to this case. We cannot recognize legally the existence of a conventional agency between the tutor and an undertutor. The tutor cannot appoint an undertutor to act as his agent in the matter of the tutorship, nor can an undertutor legally accept such a position from the tutor. It is the duty of the undertutor to guard the interest of the minors and to call the tutor to account, and he should not place himself in a position which leaves no one to perform that duty, but necessitates, on the contrary that the tutor should have to call him to account.
If he undertakes to administer the affairs of a succession under a power of attorney from the tutor, he will, as between himself and the minors, be held to the obligation of a “negotiorum gestor” and a direct liability for his acts. The mere form in which this liability is enforced is not sacramental; that form is more in the interest of the plaintiff than of the defendant. The defendant is as free to set up his defenses and to advance his claims in a direct action as in an action to account. We may mention incidentally that, in response to some inquiry from the court as to where the tutrix was at the present time, it was stated that she had recently married the undertutor.
For the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the judgment appealed from is annulled, avoided, and reversed, the exception of prematurity is overruled and case reinstated, and this cause is remanded to the district court to be proceeded with according to law.