On the Merits.
The ex parte order dismissing the interdiction suit referred to in the foregoing opinion on the motions to dismiss the appeals was rescinded by the trial judge, and judgment was rendered on a rule nisi dismissing the proceedings at the cost of the plaintiffs in the interdiction suit. From that judgment the plaintiffs have prosecuted an appeal, which has been consolidated with the appeals taken by the administrator pro tempore and the latter’s attorneys. The only part of the judgment rendered on the oppositions to the final account of the administrator pro tempore from which the latter appealed is the reduction of the fee of the administrator pro tempore from $15,000, the amount placed on the account, to $4,000; and the only part of the judgment from which the attorneys of the administrator pro tempore appealed is the reduction of their fee from $15,000, the amount allowed them on the final account, to $2,000. The testamentary executor, in answer to the appeals, prays that the account of the administrator pro tempore be rejected entirely.
The issues presented by the various appeals therefore are as follows, viz.:
First. Whether the trial judge should have dismissed the interdiction suit without first allowing the administrator pro tempore to render an account of its administration and be discharged from the trust.
Second. Whether the costs of the interdiction proceedings, the suit having abated at the death of Mrs. Pons, should be imposed upon the plaintiffs, or each party should bear his or her own costs.
Third. What compensation should be allowed the administrator pro tempore, and what should be allowed the latter’s attorneys for their services respectively?
Opinion.
[2] Before the interdiction proceedings could be terminated and dismissed from the docket of the civil district court, it was necessary that the Bank of Orleans should render an account of its administration as administrator pro tempore of the property and funds of the defendant whose interdiction had been sought. That account could only be rendered in and through the court in which the appointment had been made. If a final judgment had been rendered in favor of the defendant, declaring her sane and rejecting the demand for her interdiction, the account would have been rendered to her. If a final judgment had been rendered against her, pronouncing the interdiction, the account would have been rendered to the curator of the interdict. The interdiction suit abated by the death of the defendant, but it was nevertheless necessary that an account should be rendered by the administrator pro tempore to the heirs or executors of the estate of the defendant. The method of administration and of rendering an account by a curator of an interdicted person is governed by the same rules which govern tutors of minor children; and we think the same rules regarding the rendering of an account must apply to an administrator pro tempore in a suit for interdiction. R. C. C. 415; Interdiction of Onorato, 46 La. Ann. 73, 14 South. 299.
Our conclusion is that an orderly administration of the affairs of the defendant whose interdiction was sought, and of her succes *117 sion at her death, demanded that the interdiction suit should not have been dismissed until the administrator pro tempore had rendered an account and had been discharged from the trust. Analogous and appropriate rulings on that subject are found in the cases of Gibbs v. Lum & Co., 29 La. Ann. 526; Cawthorn v. Cawthorn, Administrator, 36 La. Ann. 1181; Succession of Melina Webre, 36 La. Ann. 312; and Eby v. McLain, 123 La. 138, 48 South. 772.
[3, 4] As to who should pay the costs of the interdiction proceedings, the appellants concede that the plaintiffs should not be reimbursed any costs paid by them, and that they should bear such costs as they have incurred for stenographer’s fees, etc. Their complaint is that the defendant should bear the costs incurred by her or for her benefit, such as the compensation to be paid the administrator pro tempore and the latter’s attorneys, the fees of expert witnesses employed by the defendant, etc.
Article 397 of the Civil Code provides that the costs of an interdiction suit shall be borne by the interdict if the defendant be interdicted, and by the petitioner if the interdiction prayed for be not pronounced.
The executor of the estate of the deceased defendant in this case demands a strict construction and application of that article of the Code; and the district judge has so interpreted and applied it.
Our conclusion is that the framers of the Code intended that a petitioner for interdiction should pay the costs of the suit if a final judgment should be rendered refusing to pronounce the interdiction, but that they did not contemplate, or intend to provide for, a ease where the interdiction suit would abate by the death of the defendant whose interdiction was sought. Hence we are of the opinion that the disposition of the costs in this case must be governed by the fact that the defendant died before a final judgment was rendered for or against her, rather than by the fact that it was an interdiction suit. Article 551 of the Code of Practice provides that the costs of any lawsuit are due to the party in whose favor the judgment has been rendered, whether the court rendering the judgment has or has not decreed that the party east should pay the costs.
When an action that is purely personal to one of the parties is abated by his death, no judgment can be rendered for or against the survivor, and there is no decree on which to base the costs of the suit. An interdiction suit, being purely personal as to the defendant, is abated if the defendant dies before a final judgment is rendered, and the payment of the costs of the suit is governed by the rules pertaining to the abatement of actions. That is what this court decided in Re Jones, 117 La. 106, 41 South. 431, where the defendant against whom a judgment of interdiction was pronounced died pending his appeal from the judgment of interdiction. It was held that, the suit having abated by the death of the appellant, no judgment could be rendered except to dismiss the appeal, and that each party to the suit should pay his own costs. The same rule, regarding the payment of costs, was applied in the case of Doss et al. v. Board of Commissioners, 117 La. 450, 41 South. 720, in which the only question involved was the constitutionality vel non of a statute of this state, and the statute in question was repealed by an act of the Legislature pending the appeal from the judgment of the district court. It was held that the action abated by the repeal of the statute attacked, and that each party to the suit should pay his own costs. In fact, the rule that each party to a suit that is abated by an event over which neither party had control must pay his own costs appears to be universally recognized. See list of decisions cited in 11 Cyc. 69 and 70. Our conclusion is that the costs incurred by or for the benefit *119 of the defendant in the interdiction proceedings, such as the compensation to be paid the administrator pro tempore and the latter’s attorneys and the fees of expert witnesses appointed or employed by or for the defendant, must be borne by the estate of the defendant.
The compensation to be allowed the administrator pro tempore and the latter’s attorneys is not fixed by statute, but must be determined by the court from the various elements of the employment, such as the responsibility incurred and the skill and volume of the work done. The services rendered in this case extended over a period of two years, nine months, and seventeen days. That is much longer than the law contemplates that an administrator pro tempore should have to serve. The inventory of the estate of the defendant amounted to nearly $350,000, consisting principally Of real estate that was heavily mortgaged, and on which rents amounting to more than $61,000 were collected and disbursed by the administrator pro tempore under orders of the court during the administration. The administrator pro tempore succeeded in avoiding a foreclosure of a mortgage of $80,000 on one piece of property belonging to the estate during the administration, and thereby rendered a valuable service. Several bankers testified that the compensation demanded by the administrator pro tempore was fair and reasonable, and several lawyers testified that the compensation demanded by the attorneys for the administrator pro tempore was not unreasonable.
It would serve no useful purpose to incumber the report of this opinion with a review of the voluminous mass of evidence pertaining to the compensation to be allowed the administrator pro tempore and to the latter’s attorneys. Our conclusion is that the compensation allowed by the district judge is inadequate, but that the amount demanded is somewhat excessive. We have concluded from all of the evidence in the case that the administrator pro tempore should be allowed $10,000, and that the attorneys for the administrator pro tempore should be allowed $5,000 as compensation for the services rendered by them, respectively.
For the reasons assigned, the judgment dismissing the interdiction suit is annulled. The judgment on the oppositions to the final account of the administrator pro tempore is amended by increasing the compensation allowed the administrator pro tempore from $4,000 to $10,000, and by increasing the compensation allowed the attorneys for the administrator pro tempore from $2,000 to $5,000. It is further ordered, adjudged, and decreed that, as the interdiction suit abated at the death of the defendant, each party thereto shall bear his or her own costs, and that the costs incurred by or for-the benefit of the defendant, such as the compensation allowed the administrator pro tempore and the latter’s attorneys, the fees of expert witnesses appointed or employed for or by the defendant, be borne by her estate. The case is therefore remanded to the civil district court to be proceeded with and disposed of accordingly.