## ALEXANDER WILSON *v.* JOHN B. CRAIGHEAD, Tutor.

The emancipation of a minor under the provisions of the acts of 23 January, 1839, and 25 February, 1837, gives him all the power over his property and rights, of a person of full age. He may, consequently, ratify any act of partition or compromise effected by his tutor during his minority; and the ratification will cure all defects in the original transaction. C. C. 1869, 2225, 2252.

Where an emancipated minor, joins with his co-heirs in an act of settlement and partition of the succession of his mother, and accepts his portion as ascertained thereby

Wilson v. Craighead, Tutor.

and there is no evidence that the settlement did not embrace all the property of the succession, he will be concluded by it.

A tutor who has received nothing, and could not have received any thing for his minor, having had nothing to act upon, has no account to render.

APPEAL from the Court of Probates of Iberville, *Dutton*, J.

*Grymes*, for the appellant.

*Edwards* and *Labauve*, for the defendant.

SIMON, J. The object of this action is to compel the defendant, who, it is alleged, was the plaintiff's former tutor, to render an account of his administration as such. The petition alleges, that during the plaintiff's minority, certain successions were opened in his favor as forced heir, to wit: that of his deceased mother, of the value of $62,338, his interest or virile share of the inheritance being *one-sixth of the estate*, or $10,389 40 ; and that of his deceased grandmother, of the value of $264,105, in which his interest or virile share was *one-sixth of one-eighth of the said sum*, or $5555 55. That one D. D. Chesnut was appointed his tutor on the 2d of April, 1834, and died, the defendant having been subsequently appointed his tutor, on the 10th of April, 1838. That the defendant neglected to cause to be rendered any account whatever of Chesnut's tutorship, and has also neglected to render any account whatever of his own tutorship of the petitioner's estate ; has never taken care of his (plaintiff's) person, education, or estate ; and has never taken any active part in the affairs of his ward, except by his participation with others in conniving to defraud the plaintiff, and to deprive him of his rightful inheritance for his, (said tutor's) benefit, &c.; by which, plaintiff has sustained damage to the amount of $20,000. Wherefore, he prays that the defendant be ordered to render an account, and be made responsible to him ; and that he may be decreed to pay him the said sum of $20,000, the amount of the interest accruing to him from the several successions aforesaid.

Before issue was joined, the plaintiff filed a supplemental petition, in which, after stating divers additional causes of action against his tutor, and giving a statement of various articles of personal and real property and slaves, belonging to the successions of his father, and of his grandfather, and mother, in the States of Louisiana and Tennessee, in which he was interested for his

virile portion, and of which he was deprived during his minority, he increases his demand against the defendant, to the sum of $40,000, for which he prays judgment, &c.

The answer of the defendant, filed on the same day that the supplemental petition was presented and filed, pleads, first, the prescription of four years, between the date of the judgment by which the plaintiff was dispensed from the time necessary to attain the age of majority, and the institution of this suit. It pleads, also, the general issue ; gives a detailed statement of the plaintiff's affairs, and of the manner in which his property was disposed of; denies that defendant ever received any part of the plaintiff's estate, or is responsible for any thing; and concludes by praying that this suit be dismissed : 1st, because all demands of the petitioner, as stated in his petition, are prescribed ; 2d, because the plaintiff is, and was, for a long time in possession of all his property, rights and credits ; and, 3d, because the defendant never had, and has not as yet, any thing to account for to the plaintiff. The answer of the defendant to the supplemental petition, is to the same purport.

On these issues, the inferior court proceeded to investigate the alleged rights of the plaintiff; and judgment having been rendered thereon in favor of the defendant, the plaintiff appealed.

It appears from the evidence, that the plaintiff's mother was duly confirmed, and qualified, as his natural tutrix, on the first of November, 1825. She died on the 3d of January, 1834, and D. D. Chesnut was then appointed tutor. After the death of the latter, the defendant was appointed tutor of the plaintiff, on the 1 0th of April, 1838. While Chesnut was acting as tutor, a certain act of compromise was passed between the heirs of Lavinia Erwin, (the plaintiff's grandmother,) and of Joseph Erwin, sr., and Joseph Erwin, jr., purporting to be a liquidation and settlement of the said successions. This act was executed on the 6th of April, 1837, with the consent and intervention of the plaintiff's tutor, D. D. Chesnut, who appeared therein as one of the parties representing the minor, Alexander Wilson, the present plaintiff. The result was, as to the plaintiff, that his portion in said estates was established and ascertained to be the sum of $4000, " *being the amount which will fall to each of the minor heirs of Eliza*

*Erwin deceased*, out of the successions of Joseph and Lavinia Erwin, said sum to be paid in three equal instalments, at one, two, and three years," &c.    On the 29th of April, 1837, an act of exchange was passed between Chesnut and wife, and William E. Edwards and wife, from the stipulations of which, it appears, that said Edwards and wife bound themselves to pay to the plaintiff, the amount accruing to him from the act of compromise and settlement above mentioned, putting themselves in the place and stead of Chesnut and wife, in all matters and things, liabilities, and obligations by the latter contracted in the said act of compromise, and exonerating them fully and entirely from all such obligations and liabilities.    On the 10th of April, 1838, the defendant was appointed tutor, and proceeded to institute a suit against the estate of the former tutor for a rendition of the account of tutorship, which account having been rendered by the widow, was opposed by the defendant, and said suit and opposition were yet pending and undetermined, when, on the 6th of December, 1838, after due and legal proceedings had before the Court of Probates, the plaintiff was, by a decree of that court, dispensed from the time prescribed by law for attaining the age of majority.    On the 4th of April, 1839, by an authentic act passed before Louis Petit, a notary public, the plaintiff then dispensed with the time prescribed by law for attaining the age of majority, acknowledged that he had received of William E. Edwards the sum of $4066 66, as the amount coming to him from the estates of Jos. Erwin and Lavina Erwin, and of Joseph Erwin, junior, under the act of compromise and settlement above mentioned ; ratifying, confirming, and making valid the said act of compromise and partition, as also the act of exchange and sale made between Chesnut and wife, and Edwards and wife, passed on the 29th of April, 1837 ; and selling, transferring and conveying to said Edwards, all the rights, titles, interests and demands which he has, or may have had, in and to the said successions, previous to the passing of the said acts of compromise, partition, exchange and sale.

The evidence further shows, that on the 20th of January, 1843, the succession of the plaintiff's mother was settled between the heirs, by an act of settlement and partition, passed before the Judge of the parish of Iberville, in which the plaintiff appeared

Wilson v. Craighead, Tutor. .

as one of the heirs in his own right, and in which his portion or share was ascertained and liquidated, independently of the amount of the sale of the plantation previously adjudicated to one Stone. The amount of the plaintiff's share was by him taken in property.

As to the other claims set up by the plaintiff in his supplemental petition: The evidence shows that the plaintiff's mother sold, and conveyed to Joseph Erwin, a large number of slaves for cash; that this was done whilst she was his natural tutrix; and it does not appear by any evidence that the defendant ever had in his possession any property belonging to the plaintiff, or that he ever received any money for him, during the existence of the tutorship.

From the facts disclosed by the record, we cannot hesitate to say, that the plaintiff's claim is unfounded, and that the defendant, without its being necessary to pronounce any opinion upon his plea of prescription, is entitled to his discharge.

*First.* Because the plaintiff, after having been legally dispensed from the time prescribed by law for attaining the age of majority, took possession of his estate; received the amount of the share or portion accruing to him from the successions of his grand-father and grand-mother, and of Joseph Erwin, jr.; ratified the acts which had been made during his minority, and transferred all his rights to another person, for a good and valuable consideration.

*Second.* Because the plaintiff, after having acted personally in the settlement of his mother's estate, received his portion therefrom, and accepted said succession as it was. And.

*Third.* Because it is not shown that the defendant ever had in his possession any property or funds belonging to the plaintiff; and because the defendant cannot be made responsible for the acts of the plaintiff's mother and natural tutrix, whose succession said plaintiff accepted.

I. The plaintiff, under the act of the 23d of January, 1829,*

---

*By the act of 1829, the power of emancipating minors was conferred on the District Courts only. By an act of 25 February, 1837, it was extended to the Courts of Probate.

(Bullard and Curry's Digest, p. 582,) was dispensed from the time prescribed by law for attaining the age of majority. The judgment of the Court of Probates, rendered on his application, and on the advice of a family meeting, had the immediate effect of vesting him with the capacity which the law recognizes in persons of full age ; and he was thereby enabled to conduct his own affairs and admininister his estate, in the same manner as if he had attained the age of twenty-one years. This doctrine has already been recognized by this court, in the case of *Harman et al.* v. *M'Cawley,* in which it was held, that "*an emancipation thus obtained, gives to the minor all the powers over his property and rights which appertain to a person of full age.*" 9 La. 571. The language of the law upon which that opinion is based, is too clear to require or admit of any further comment.

The plaintiff having thus acquired a full capacity to act, was at liberty to ratify the act of compromise and partition consented to by his tutor during his minority. This he did, by receiving from Edwards the amount to which he was entitled under the act, and transferring to him all his hereditary rights for the consideration therein expressed. He must be bound by his act, which has the effect of curing all the defects which may have existed in the original transaction. Civil Code, arts. 1869, 2225, 2252. 2 La. 519. 2 Robinson, 2. 3 Ibid. 256. He had, therefore, nothing to claim against the defendant, as proceeding from the successions which were the subject of the act of compromise and partition thus subsequently ratified, as he had put himself in possession of all that he could ever pretend to obtain, after his transaction with Edwards.

II. Nothing shows that the settlement of the succession of the plaintiff's mother, which was made in 1843, does not contain all the property and effects belonging thereto ; nay, the amount thereof, added to the sum of $42,000, which proceeded from the sale of the plantation, makes an aggregate of $69,300, of which he received his share, while the amount declared upon in the petition only shows $62,338. This part of the plaintiff's demand is clearly unjust.

III. The defendant cannot be made answerable for any act of the plaintiff's mother, during the natural tutorship ; as from the

plaintiff's having accepted her succession purely and simply, it necessarily results, that he would be bound towards himself, as one of the heirs, for the consequences of the tutorship. Supposing that she illegally sold to her father slaves belonging to her children, a fact which is far from being established, how can it be pretended that the defendant is to be made liable in damages? If such damages were allowed, would not the plaintiff, as one of the heirs, be immediately made responsible for them? No claim was set up by the plaintiff against his mother's estate, on account of the tutorship, at the time that the settlement thereof was made. This part of his demand is too absurd to be for a moment countenanced. As to the other allegations in the supplemental petition, no proof has been adduced to sustain them; and every thing shows that the plaintiff's pretensions on this score, are unfounded and imaginary.

Upon the whole, we agree with the Judge, *a quo*, in the opinion, that the plaintiff has failed to make out any part of his case. It is not shown that the defendant, during the short period of his administration, received anything, or ever could have received anything for his pupil. No proof has been adduced from which fraud or neglect could even be inferred; and as this court said, in 4 La. 136, the tutor having received nothing, and having had nothing to act upon, has, therefore, no account to render.

*Judgment affirmed.*