O’NIELL, O. J.
 

 This suit was provoked) by an alleged slander of the plaintiff’s title to a farm containing 80 acres, and was converted into a petitory action by the defendants’ claiming, in their answer to the suit, that they owned three-fourths of the property. The parties who were originally the defendants, and who are now the plaintiffs in the petitory-action, are Cecil Horn, Buel Horn, and Mrs. Isa Horn Boone, wife of J. B. Boone. The name Isa Horn was sometimes written leer Horn. She and Cecil and Buel Horn are the three youngest children of Mrs. Isa Horn, who is now the widow of R. A. Westmoreland. She bought the farm for herself and the three children, from one J. E. Largent, on the 2d of October, 1918, for $1,550 cash, by an authentic act, duly recorded, and reciting that the sale was made to Mrs. R. A. Westmoreland, a widow, and her three youngest children, namely, Cecil Horn, Buel Horn, and leer Horn. Cecil Horn was then nineteen years of age, Buel was seventeen, and Isa (or leer) was only twelve. The deed was signed only by Largent, Mrs. Westmoreland, the notary public, and the two witnesses. Two of the children, Buel and Isa Horn, were present at the sale. Cecil was then absent from the parish, but was consulted by his mother, by telephone, and approved of the buying of the property. The younger boy, Buel, had ridden over and inspected the place with his mother and also approved of her buying it for herself and the three children. The price was paid by a check for $1,550 drawn by Mrs. Westmoreland on her own bank account. She had collected $2,000 insurance on the life of her husband, Westmoreland. She and Cecil Horn both testified that he had previously lent her $300 to be applied to the price of the farm, and that she owed him also $400 which he had contributed, from time to time. Mrs. Westmoreland and Buel Horn testified that she owed him $185, and she testified that she owed the girl, Isa, $185, for sums which these children had contributed from their earnings, previous to the buying of the farm. It appears that the family of four had worked industriously at cotton farming before they bought the Largent farm, and Cecil, the eldest boy, had worked also in the oil fields. Our conclusion, however, from the evidence, is that the contributions which were made to the support of the family from the earnings of the three children were very small, and were merely the- fulfillment of a natural obligation, and that Mrs. Westmoreland was not really in debt to the children at the time of the buying of the farm. She sold it to the plaintiff, J. N. Williams, for $1,500, on the 17th of March, 1919 — only five and a half months after she had bought it. The three children were yet minors, and the mother had no authority to sell the property for them. Neither had she any authority from the court to buy the property for them or in their name.
 

 The district court decided, on the authority of Lyons v. Lawrence, 118 La. 461, 43 So. 51, that, inasmuch as Mrs. Westmoreland had no authority to include the names of her children in the deed, as purchasers of the property, the title vested entirely in her, and that, even though the purchase in the names of the children might have been ratified by them after they became of age if their mother had not sold the property before they became of age, she had the right to sell it at any time,
 
 *668
 
 so long as the purchase in the names of the children was not ratified by them or by an appropriate judicial proceeding. The court therefore decided in favor of the plaintiff, Williams; and the defendants, Cecil and Buel Horn and Mrs. Isa Horn Boone, have appealed from the decision.
 

 The judgment appealed from is sustained by the jurisprudence, particularly the most recent decisions of this court on the subject, viz.: Smith’s Heirs v. Johnston, Sheriff, et al., 110 La. 558, 34 So. 677 ; Lyons v. Lawrence, 118 La. 461, 43 So. 51 ; and Wagster v. Nabors Oil Corporation, 9 La. App. 14, 118 So. 857, in which this court refused a writ of review, October 2,1928, on the ground that the judgment was correct.
 

 The purport of the decisions referred to is that, when a parent buys property with his or her own funds and takes the title in the name of his or her minor child, the transaction is, in effect, a donation of the property by the parent to the child, which may be revoked by the parent by a sale of the property to a third person before the child has become of age and accepted the donation or ratified the transaction. The case of Smith’s Heirs v. Johnston, Sheriff, et al., and Lyons v. Lawrence, were decided by our predecessors, and established a rule of property, before any of the present incumbents had become members of this court; and, notwithstanding it may be difficult to reconcile the doctrine of the decisions with article 1546 of the Civil Code,' which provides that a parent may accept a donation for his or her child without being tutor or tutrix of the child, we are constrained to apply the doctrine of the decided eases until the Legislature sees fit to change the law.
 

 The decisions which we have cited do not contradict that a sale of real estate to a minor is not null, for it is subject to ratification when he has reached the age of majority. Article 1791 of the Civil Code declares that a person who has dealt with a minor cannot plead the nullity of the agreement if the min- or, after becoming of age, or if the legally authorized representative of the minor during his minority, undertakes to enforce the agreement. And article 226 contains the inference that minor children may buy property with money which they have earned, for it provides that the usufruct which the parents have on the estate of their minor children “shall not extend to any estate which the children may acquire by their own labor and industry.”
 

 In Holmes v. Patterson, 5 Mart. (O. S.) 693, it was held that a deed purporting to be a sale of a slave to a minor, “for value received,” was not a valid sale because no price or consideration was expressed or proven, but became valid as a donation when the minor, after becoming of age, accepted the gift. It was virtually said that the deceased, Holmes, who had transferred the slave to the minor, Patterson, might have made a valid sale of the slave afterwards to a third party during the minority of Patterson; for the court said:
 

 “The plaintiffs contend that the donation, if any existed, was revoked by the death of the donor, before the acceptance of the donee. In the present case, it does not appear that there was any such acceptance; but we are-of opinion that the instrument is valid, at least as a deed of gift, and that as there was-such a deed, the donation is valid, although the donor died without having delivered either the deed or the property mentioned’ therein,
 
 if he did not malee any other disposition of it.”
 
 (The italics are ours.)
 

 In Henry v. Hyde, 5 Mart. (N. S.) 633, one-Henry bought a lot with his own funds and.
 
 *670
 
 took the title in the name of his minor daughter. Thereafter Henry became in debt to Hyde, and the latter obtained a judgment against Henry and seized the lot. The daughter, having become of age, enjoined the seizure and sale. Hyde pleaded that Henry’s taking the title in the name of his daughter was a fraud upon the creditors of Henry; but the court held that Hyde had no cause or right to complain of the alleged fraud, because he was not a creditor of Henry when the lot was bought in the daughter’s name. Justice Martin, for the court, said:
 

 “The premises were never the father’s property. If the deed was fraudulent and void, it passed no property from the vendor. If the father acquired any right by furnishing the price, he or his creditor must exercise it directly by an action. * * • *
 

 “The only circumstance which might be of any weight in proving the fraud, is, that the price of the premises was paid by the father; but of what weight can it be when there is not the least tittle of evidence that he owed a farthing at the date of the deed which is attacked as fraudulent.”
 

 And so it might be argued in the present case — if Mrs. Westmoreland had not bought the property jointly with her children — that the property was never her property, and that if the deed was void it conveyed no title from Largent to any one. But the fact is that the transfer was made to Mrs. Westmoreland for herself and her three children, jointly, and if the title was not legally vested in the children it was vested entirely in Mrs. Westmoreland. The decision in Henry v. Hyde, therefore, does not conflict with the later decisions on the subject.
 

 In Sarapure v. Debuys, 6 Mart. (N. S.) 18, a woman bought two lots, after the death of her husband, but with community funds, and instructed the notary public in making the inventory of the husband’s estate, to include the two lots; the result being that they were sold under orders of court in the husband’s succession as belonging to the community. In a contest between the purchaser of the lots and one of the woman’s children, the court said:
 

 “But it is clear that the mother had no right to make this purchase on account of her children, to whom she was tutrix. Minors can neither alienate nor acquire property, without the authority of justice. Febrero, V. 2, Cap. 4, § 2, No. 61.
 

 “It is, however, equally clear, that the minor after he comes of age, may approve either of the alienation of his estate or the purchase made for him; and if he does any act which amounts to such approbation, the contract is as binding on him as if made at the age of majority.”
 

 Taylor v. Rundell, 2 La. Ann. 367, was a suit on a promissory note given by Rundell to one Thorpe as the price of Thorpe’s claim to certain public land and the improvements which Thorpe had made on the land. Run-dell was a minor when he bought Thorpe’s claim and the improvements,' and pleaded the minority as a defense to the suit on the note. But the court held that, although the sale was not originally valid, it was ratified by Rundell’s remaining in possession of the property and cultivating the land as his own after he had beeome of age.
 

 In Duvic v. Henry, 33 La. Ann. 102, Duvic enjoined a sale of a-blacksmith shop, seized by Henry on a judgment against Duvic’s father. Duvic averred that he had bought the property before he was of‘age and had remained in possession of it after he had arrived at the age of majority. The ruling was that Duvic’s allegation that he had remained
 
 *672
 
 in possession of the property after arriving at the age of majority was a sufficient allegation that he had ratified the sale made to him. Chief Justice Bermudez, for the court, said':
 

 “The fact that he was not quite of age when he acquired the establishment cannot prove injurious to him. It is well established that a minor can better his condition by acquiring property, eventually at the risk of the vendor.”
 

 Accordingly, if Mrs. Westmoreland had not disposed of this property during the minority of her three children, and if they had remained in possession of the property after arriving at the age of majority, the sale which was made to them by Largent would have become valid — whether regarded as a sale to them by Largent or as a donation to them by their mother.
 

 The judgment rendered by the district court in this case is not contrary to the laws of registry. As long as Mrs. Westmoreland had not disposed of the property, after the sale to her and her children, any one might have acquired a valid title to three-fourths of the property from the children, either through appropriate judicial proceedings during their minority, or by dealing with them if they had been emancipated or had become of age.
 

 The judgment is affirmed.