Airey & Co. vs. Okolona Savings Institution.

No. 7848.

T. L. AIREY & Co. vs. THE OKOLONA SAVINGS INSTITUTION.

The evidence does not establish such contract and liability on the part of Defendant as charged by Plaintiffs.

Plaintiffs having by their conduct led Defendant to believe that a certain party was their accredited agent, are estopped from denying the agency.

It is elementary that a demand, not embraced in the pleadings and, therefore, not passed upon by the lower Court, cannot be urged on appeal.

APPEAL from the Fourth District Court for the parish of Orleans. *Houston*, J.

*William F. Mellen* for Plaintiffs and Appellants.

*Thos. J. Semmes* and *T. M. Gill* for Defendant and Appellee.

The opinion of the Court was delivered by

POCHÉ, J. Plaintiffs seek to recover $2490 63, alleged to be due to them by the defendant, as a balance of a special deposit of $4990 63 placed to their credit at the defendant bank on November 1, 1878, the latter having accounted for $2500 of said deposit, but having failed to account for the balance.

After answering by general denial, the defendant admits to have received the deposit as alleged, but avers that it has fully accounted to plaintiffs for the whole of said deposit, as follows: That said sum of money had been entrusted to defendant, for the purpose of being paid out for purchases of cotton, to be made in Okolona, Miss., by plaintiffs' customers or agents, at the demand or order of the latter. That, in obedience to instructions received by defendant from plaintiffs' agent and solicitor, Seymour, with whom arrangements for said deposit had been made, defendant had paid out the whole amount thus deposited, on the orders or checks of R. R. Ward, who had been represented by said Seymour as fully authorized to draw on said fund. That the amount of $2500, acknowledged as a credit on said sum by plaintiffs, had been paid out by defendant to the order of said Ward, by virtue of, and under the instructions of said Seymour, to the knowledge of the latter, and with the approval of plaintiffs, who are, therefore, bound by the subsequent payments made by the defendant, in the same manner, on the order of said Ward.

The judgment of the District Court rejected plaintiffs' demand and they have appealed. The record shows that, as far back as the 5th of September of that year, the arrangement touching this deposit was made between the cashier of the bank and the duly accredited agent of plaintiffs, Seymour; but that, owing to the interruption of communication between Okolona and New Orleans, on account of the yellow fever quarantine of that year, it was not carried out before the first of No-

vember following. Beginning on that day, the bank commenced to pay and to debit to plaintiffs' funds, the checks of R. R. Ward, who was then purchasing cotton at Okolona for consignment to plaintiffs,—and that by the 11th of that month Ward had drawn, and the bank paid, twenty checks, aggregating $1500,—to cover which, Ward drew a draft on plaintiffs, to whom it was forwarded to its credit by defendant, and that said draft was duly honored by them; and that between the 11th and the 18th of the same month, Ward drew, and the bank paid, out of the same fund, fourteen checks, amounting together to $1000, which amount was covered by another draft of Ward on plaintiffs, who received and honored it in due time. The record further shows that between the 18th of November and the 12th of December, the bank debited to that fund some twenty-eight checks of Ward, the last of which being for $300, and being by $106 41 in excess of the balance of the fund, was only partially charged to debit of plaintiffs, to wit: for $193 59. On the 26th of December Ward drew on plaintiffs for $2490 63, to cover the amount of checks drawn by him between the two dates last mentioned. But, on receipt of this draft, plaintiffs refused to allow credit for it to the defendant, to whom they returned it, and, on the other hand, they drew in favor of their agent, Seymour, on the defendant, for that identical sum, as their balance in the bank, where the draft was duly presented and refused, whereupon it was protested by Seymour.

The whole controversy turns upon the nature of the contract made by plaintiffs, through their agent, Seymour, with the defendant bank, in the beginning of September.

Plaintiffs' theory is that their funds were deposited with the bank, with a view to facilitate purchases of cotton, at Okolona, for consignment to their house, through customers who were to be selected and controlled by the bank, and that the orders of such customers were to be honored by the bank, only upon satisfactory proof that the funds drawn were used only for the purchase of cotton for, and actually consigned to plaintiffs, and that the bank was responsible to them for any amounts paid by it out of that fund, and not properly accounted for, or misapplied by, any purchasing customer. Hence, they contend that Ward, having failed to ship to them any cotton to represent the sum of $2490 63, remaining to their credit after the draft of November 18th, the bank is responsible to them for that sum, whether it was paid out to him or not, for it was the duty of the defendant, under the contract, to see that the funds drawn by Ward were actually used in the purchase of cotton, to be consigned to them.

This theory is denied by the officers of the bank, who contend that the funds were thus deposited to facilitate the purchase of cotton at Okolona, by plaintiffs' own agents or customers, who were to be selected

by themselves, and after such persons were made known or accredited by plaintiffs to the bank, the latter was to honor the demand for funds emanating from the person or persons thus selected, and to charge the sums thus drawn to the debit of plaintiffs' deposit. Hence, they charge that R. R. Ward having been represented to them by plaintiffs' solicitor, Seymour, as a customer authorized to purchase cotton for them, and to draw on their fund, the bank recognized Ward's orders for funds as binding upon both parties to the contract. The bank officers further charge that on the first of November, Ward, who had an account of his own at the bank, informed their cashier that, from the time he began to check on plaintiffs' deposit in the bank, "all his checks on the defendant were to be paid out of said deposit for investment in cotton to be consigned to plaintiffs;" and that all of said fund was thus drawn by Ward, who was the only person or customer ever referred to them touching said deposit by plaintiffs or by their agent Seymour. The testimony in the record, mostly parol, is unavoidably and painfully conflicting, and the witnesses being entirely unknown to us in reference to their veracity, we have been at great pains, in reading over and over their contradictory statements, to detect the truth, which is usually closely concealed in the rubbish of a discordant record.

Plaintiff's theory is supported by the testimony of their confidential agent, Seymour, and by a letter written by him, from Okolona, to his employers, dated the 5th of September, purporting to recite the contract or arrangement which he had made with Babbitt, the cashier of the bank, and which he claims to have read to Babbitt, who approved the same. Both of his statements are flatly contradicted by the cashier, and by McIntosh, the president of the bank, who testifies that, in subsequent conversations with Seymour and Babbitt, the contract made was referred to and construed, without objection from Seymour, in the manner in which it was all through understood and executed by the defendant. Seymour denies that he ever authorized Ward to draw on plaintiffs' fund, and that he ever represented him to the bank as thus authorized. But, on that most material point, he is flatly contradicted by McIntosh, the President, Babbitt, the cashier, by Ward himself, and by Moore, who was Ward's clerk, who all state that Ward was thus represented and accredited by Seymour to the defendant.

In addition to those contradictions, Seymour's testimony is greatly weakened by self-contradictions and other circumstances, which entitle it to very little weight in our opinion.

For instance, in his examination in chief, he fixes the 17th of December as the date of a very important and material conversation between Babbitt and himself at Okolona, and he subsequently admits that he was not in Okolona on that day at all.

Again, in his testimony on cross-examination, he emphatically denies that, in the early part of September, communication between New Orleans and Okolona had been interrupted by reason of the yellow fever panic, and that there was any yellow fever excitement at Okolona. And in his letter of the 5th of September, which is the real basis and the whole groundwork of plaintiffs' theory, we find the following language: "*As soon as communication is open with New Orleans,* the house will send the bank here packages of currency of five thousand dollars each to supply the wants of our customers or any one who may ship us cotton from here." * * * "It is impossible to form any definite idea of what will be the condition of things fifteen days hence growing out of *this fever panic, which threatens to stop the wheels entirely.*"

His testimony being so contradictory and unsatisfactory upon matters of so grave a character as the interruption of communication between this metropolis and a section of country in which he was actually traveling, and upon other matters equally calculated to impress themselves upon the minds of men, owing, doubtless, to a defective memory, we feel compelled to give no weight to such testimony unless strongly corroborated. 26 A. 591, Cross v. Parent.

But his theory that a bank receiving a deposit, to be paid out in a short time for the purchase of cotton for its depositor, and receiving no compensation or other advantage, will undertake the responsibility of the disbursement of such fund by selecting customers or purchasing agents, or will undertake to disburse such fund to their depositor's customers, upon proof made for every amount drawn, that a corresponding purchase and consignment of cotton have been made, is not only uncorroborated but it is contradicted by four witnesses, whose testimony is unimpeached, and is at variance with all the circumstances and equities of the case and with the custom of the country, as shown by the record.

It is shown that in all these towns on railroads in Mississippi, the cotton purchased, as it was contemplated in this contract, is brought to town in wagons by the farmers or their tenants or laborers, and bought on the streets by merchants, agents or speculators; that frequently one bale of cotton is the joint and undivided property of two or more laborers or other persons, and that the cotton must be paid for in cash before delivery. Other cottons, which are consigned to merchants or to factors at this or other markets, cannot be purchased at these small towns or shipping points, thus restricting the transactions carried on by the customers or purchasing agents to small lots of unengaged cotton, which is handled as above stated.

Under such a state of things it is impossible for the purchasers to obtain delivery of the cotton without cash on the spot, and hence it

would be impossible for them to furnish to the bank, as a condition of their drawing money, railroad receipts or bills of lading, nor could a bank be expected to undertake to send to a distant depositor a written voucher, either in the shape of a receipt or sight draft, for every purchase made and for every amount drawn, when frequently the purchases from one individual do not cover more than one bale of cotton. Thus it is seen that the amount of $1500, covered by Ward's first draft, was made up of twenty checks, the greater number of which were for less than $100, some being as low as $7 and $4.

But Seymour's theory and testimony are not even supported by the very acts of his principals, who honored the drafts of $1500 and $1000, drawn by Ward, without requiring any other voucher of the defendant, and without inquiring into the manner of drawing their money by Ward.

The course of plaintiffs in dealing with these two drafts not only contradicts Seymour's version of the contract, but it binds them for all of Ward's subsequent checks on the fund in question.

The $1500 draft was enclosed in a letter from Babbitt, the cashier, who merely says: "I enclose for credit a S. draft of R. R. Ward, $1500," without a word of explanation. If Ward had been selected by the bank and not by Seymour, a fact which certainly would have been known to the cashier, if not to the plaintiffs, the former would have explained Ward's connection with the fund, or said some words in support of his right to draw on plaintiffs. But the cashier knew that Ward's connection with the fund had been explained to plaintiffs by their solicitor, Seymour. After expressing an opinion on the limited means of Ward, Babbitt adds: "*The arrangement with him, however, was made by Mr. Seymour.*"

Plaintiffs answer this letter, but they ask no questions about the arrangement, and say nothing, showing even astonishment at the information that Ward had been selected as a customer by Seymour. If the statement had been untrue or incorrect, plaintiffs would at once have protested, but they said nothing, and honored the second draft for $1000, drawn under exactly the same circumstances.

Their silence concludes them and estops them from subsequently denying the agency of Ward in the premises. Story's Eq. Jurisprudence, ¿ 385; 5 A. 107, Meux vs. Martin.

Plaintiffs contend that the money drawn by Ward after the 18th of November, was against his individual account, and that the bank subsequently altered the entries so as to debit them to their account. But this is not supported by the evidence, nor by the extracts from the books themselves, which are all satisfactorily explained by the cashier. The testimony of the President and of the cashier shows that the over-

NEW ORLEANS, DECEMBER, 1881. 1351

drafts of Ward on his individual account were subsequently reimbursed by credits, which balanced his account within ten dollars.

While it is plain to us that plaintiffs have met with a serious loss in this venture, and that their confidence has been grossly abused, we fail to see how, under the evidence, this breach of confidence can possibly be brought home to the defendant, who has, as we believe, discharged every obligation imposed upon it by the contract, which was correctly understood by its officers, and cannot, therefore, be held responsible for the shortcomings of Ward, or for the misplaced confidence of plaintiffs either in Ward or in Seymour.

The claim of plaintiffs, urged in their brief for the first time, to a judgment on a sum of $500, acknowledged by defendant to be held to the credit of plaintiffs, as a part payment made by Ward on the draft of $2490 63, of the 26th of December, which had been returned to defendant by plaintiffs, and which the bank held for collection, as stated in its answer to plaintiffs' letter, cannot be entertained at this stage of the case.

It is elementary that a demand not embraced in the pleadings, and, therefore, not passed on by the lower court, cannot be urged on appeal. Nothing, therefore, in this opinion can affect their right to recover this amount, which, as we understand from the evidence, will be paid by the bank on their order.

The judgment of the District Court is, therefore, affirmed with costs.