168 So. 508

**HERBERT v. LANGHOFF et al.**

No. 33829.

April 27, 1936.

Rehearing Denied May 25, 1936.

Sanders, Baldwin, Haspel & Molony and Robert R. Rainold, all of New Orleans, for relator William A. Langhoff.

D. Thomas Salsiccia, of New Orleans, for respondent Mrs. Catherine Ann Herbert.

Robert G. Polack, of New Orleans, for respondent in writ Jeannie Copes White.

ODOM, Justice.

This is a damage suit growing out of a collision between plaintiff's automobile while being operated by a colored man named Andrew Simmons and one owned and operated by Miss White. The facts, in so far as they need presently be stated, are that plaintiff drove her automobile to the gasoline filling station of William A. Langhoff for the purpose of purchasing gasoline. The only person she found there was a colored man named Andrew Simmons, who sold her seven gallons of gasoline. After the purchase, plaintiff asked the colored man if he washed cars and he told her that he did. She asked him what he charged, and he told her that his charge was 50 cents, and that he would be glad to wash hers. She told Simmons that he might wash the car and that she would pay the price, but that it would be necessary for him to carry her to her home in the car and bring it back to be washed and that after it was washed he would have to deliver it back to her at her residence.

Simmons agreed to do this, carried plaintiff to her home in the car, drove it back to the filling station, and there washed it. He then started back to plaintiff's home in the car, and while on the way the car collided with one owned and operated by Miss White and was badly damaged.

Plaintiff brought suit against both Miss White and Langhoff, the owner of the filling station, alleging that the collision was due to the joint negligence of Miss White and Simmons. The theory on which Langhoff is sought to be held liable is that Simmons was his employee and agent, and that while driving her car he was acting within the scope of his employment.

Miss White denied that she was negligent, and defended on that ground. Langhoff's defense was that Simmons was not his employee, and for that reason he was not liable for any damage caused by his negligence.

The trial judge dismissed the suit against Miss White on the ground that the collision was due solely to the fault and negligence of Simmons. He rejected plaintiff's demands against Langhoff on the ground that Simmons was not his employee and agent. Plaintiff carried her case to the Court of Appeal. That court sustained the trial court's finding as to the negligence, affirmed the judgment as to Miss White, but reversed it as to the defendant Langhoff, holding that he was liable because Simmons was his agent.

We ordered the case up on the application of Langhoff, not for the purpose of inquiring into the question of negligence, because we accept the findings of the Court of Appeal as to that, but for the purpose of reviewing the judgment of

that court holding that as a matter of law Langhoff was liable to plaintiff for damage she sustained on account of the negligence of Simmons.

■ Article 2320 of the Civil Code says that: "Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." It follows, therefore, that, if the relationship of master and servant existed between Langhoff, the defendant, and Simmons, the driver of plaintiff's car, and that if the damage to plaintiff's car was occasioned by the negligence of Simmons while in the exercise of the functions for which he was employed, then Langhoff is liable.

The Court of Appeal found and affirmatively held that no contractual relationship ever existed between Langhoff and the colored man, Simmons; that no relationship of master and servant between them arose out of a contract of employment. On this point the Court of Appeal said:

"There is no positive evidence contradictory of that offered on behalf of defendant Langhoff to show that, as a matter of actual fact, the negro Simmons was not in his employ, and, in the absence of such evidence, we cannot but conclude that there was no relationship of master and servant between them."

The basis of the court's holding that Langhoff was liable was its finding that under the circumstances shown to exist he was estopped to deny the agency.

■ The rule is well established in this state and elsewhere that, if a person by his conduct and course of dealings leads others to believe that a certain party is his accredited agent, he is estopped from denying the agency when the rights of third persons become involved through the acts and conduct of the ostensible agent.

The doctrine of "agency by estoppel" is well recognized. But, as stated in Corpus Juris, vol. 2, § 70, p. 461: "The doctrine of estoppel involves only apparent or ostensible agency, which exists where the principal intentionally, or by want of ordinary care, induces third persons to believe another to be his agent although he did not in fact employ him. As to third persons, the distinction between actual and apparent or ostensible agency is unimportant as the liability of the principal and agent is the same in either case; but as between the parties themselves, of course, the ostensible agent is no agent at all. Apparent or ostensible agency is merely agency by estoppel and it is more strictly accurate to say that liability arises from the acts of so-called agent, not because there is any agency but because the principal will not be permitted to deny it." The same work, volume 2, § 212, p. 574, says:

"Ostensible authority to act as agent may be conferred if the principal affirmatively or intentionally or by lack of ordinary care, causes or allows third persons to act on an apparent agency."

It is on these general principles, or the doctrine of agency by estoppel, that the Court of Appeal held that Langhoff was liable for the acts and negligence of the negro Simmons. In support of its holding on this point the court cited three Louisi-

ana cases, Rankin v. Nolan Stewart et al., 5 La.Ann. 357, Airey & Company v. Okolona Savings Institution, 33 La.Ann. 1346, and American Disinfecting .Co. v. Police Jury, 10 La.App. 389, 120 So. 135, 137.

The holding in the Rankin Case is not pertinent here, but the other two cases support the general rule or doctrine of agency by estoppel. However, these cases are distinguishable from the one at bar on the facts, and we do not think they support the court's holding here.

In the Airey & Co. Case the facts were that Airey & Co. deposited to its credit in Okolona Savings Institution $4,990.63 to be paid for cotton purchased in Mississippi by plaintiff's customers or agents on the demand of the latter. A man named Seymour was plaintiff's agent and solicitor. Seymour had arranged the deposit by plaintiff in the defendant bank. He represented to the bank that R. H. Ward, a cotton buyer, was fully authorized to draw against said deposit, and the entire amount of the deposit was paid out by the bank on the checks or orders drawn by Ward. Airey & Co. had no direct contractual relationship with Ward. Seymour was Airey & Co.'s accredited agent to the knowledge of the bank, and it was upon his representation that the bank paid out the funds on the checks and orders of Ward.

Plaintiff brought suit against the bank for $2,490.63, alleging this to be the balance due after giving credit for $2,500 acknowledged to have been properly paid. The bank's defense was that the entire amount had been paid out on the orders of Ward and that it owed plaintiff nothing. Plaintiff then denied Ward's authority to draw against the account.

The court found the facts to be that plaintiff had personal knowledge of Ward's dealings and had sanctioned his conduct by approving his drawing against the deposit to the extent of $2,500, and, such being the case, the plaintiff was estopped from denying that he had authority to draw out the balance of the account on similar transactions. The court said: "Their silence concludes them and estops them from subsequently denying the agency of Ward in the premises"—citing Storey's Equity Jurisprudence, § 385, and Meux v. Martin, 5 La.Ann. 107, holding that: "Where a party uses concealment or remains silent when it was his duty to speak, and thereby thinks he has acquired an advantage which he seeks to enforce, he is estopped by the line of conduct he has seen fit to pursue from succeeding in such action."

In American Disinfecting Co. v. Police Jury, cited by the court, the facts were that for a period of more than ten years the police jury of Grant parish, had, without special authority conferred, allowed the sheriff to purchase in its name from the plaintiff disinfectants for the jail and courthouse, and without dissent had approved and paid the bills when presented. The disinfectants were always ordered by the sheriff, the bills sent to, and paid by, the police jury. In April, 1926, the police jury by resolution ordered that thereafter no purchase of any kind be made for it by the sheriff or any other officer without special authorization first obtained.

Neither the plaintiff nor the sheriff had any knowledge of this change of system. In June, 1926, the sheriff ordered plaintiff to ship 120 gallons of disinfectant and to charge the same to the police jury. Plaintiff did so, as was its custom, and rendered its bill, which the police jury refused to pay on the ground that the sheriff had no authority to make the purchase. The Court of Appeal, Second Circuit, held that the police jury was liable, saying:

"Under such conditions, the police jury cannot escape the payment of the bill in question on the technical ground that the sheriff had no authority to bind the parish. It had constituted the sheriff its agent for making purchases of such necessary supplies by sanctioning and ratifying his conduct in that respect. It would be wholly unfair and inequitable to permit the parish to repudiate this debt on the technical ground that the sheriff had no authority to make the purchase, and, as a matter of law, it cannot do so. It is equitably estopped from denying the agency"—citing 30 Cyc. 1236.

The facts in the case at bar are that the colored man, Simmons, was in no way connected with Langhoff's business. He washed cars on his own account, not on Langhoff's premises, but on the adjacent street. Langhoff had no wash rack and did not wash cars as a part of his business, and there was nothing about the premises to indicate that he did. Simmons had been permitted by Langhoff to stay on and about his premises and to pick up such wash jobs as he could. When plaintiff drove up to the filling station, Langhoff was absent. The only person she saw there was Simmons. There were two mechanics in the repair department, but they did not see her, nor did she see them. Simmons sold her the gasoline, and upon that act of his and that alone she bases her contention that the defendant is estopped from denying the agency.

We have read plaintiff's petition, as well as her testimony, and find that she neither alleged nor testified that any other fact or circumstance misled or influenced her to believe that Simmons was defendant's servant or employee. She testified that she had been on the defendant's premises only once before, and then had casually stopped there to have the carburetor of her car adjusted. She says she then told Langhoff that she had previously had her car serviced at a downtown service station, but that, inasmuch as she lived in close proximity to his place, she would rather bring her car there if he was prepared to take care of such repairs as she might need. He told her, she says, that he operated a repair department, had good mechanics, owned a wrecker, and would render such services as she might need. She did not see Simmons, the colored man, on or about the premises at that time, and she does not say that Langhoff represented to her that he washed cars in connection with his other business.

The Court of Appeal said in the course of its opinion that: "The case might have been different if it had been shown that Simmons was a mere trespasser or meddler who had no connection whatever with the station; but it is shown, on the con-

trary, that he was not a trespasser or med-dler and was permitted to remain constantly in front of the station, apparently holding himself out as an employee and soliciting business such as is ordinarily done by filling stations and garages."

It was shown beyond question that Simmons had no connection whatever with the filling station. He was not a trespasser because he had been permitted to remain on the premises and solicit car washing on his own account. It is said that by doing so he was "apparently holding himself out as an employee" of the owner of the station.

But the fact that Simmons had been permitted to remain constantly in front of the station apparently holding himself out as an employee did not mislead plaintiff because she did not know that; she saw him there only once, and that was the time she bought the gasoline and employed him to wash her car. So far as she knew, or had reason to know, he may have been a trespasser and meddler at the time, and may never have been on the premises before.

Plaintiff's claim of estoppel is based solely on the fact that Simmons sold the gasoline. But it is affirmatively shown that he was not authorized to make that or any other sale of gasoline, and, if he had ever made any other sale, it is not pretended, much less shown, that defendant knew anything about it. We quote again from Corpus Juris, vol. 2, p. 465:

"If the claim of estoppel is based on the alleged principal's acquiescence in or recognition of another's assumptions of authority, it must appear that he had knowledge thereof, else no estoppel arises." In the notes following the above text we find this:

"Even though similar previous acts of the agent, done with the knowledge and approval of the principal, are shown, a recovery can not be sustained if such evidence alone is relied upon. It is further necessary to show that the person dealing with the agent had knowledge, at the time of such dealing, of such previous acts and relied upon them"—citing Pease v. Fink, 3 Cal.App. 371, 85 P. 657, Schoenhofen Brewing Co. v. Wengler, 57 Ill.App. 184.

"A very general mode of establishing authority on the part of the agent to bind the principal is by proof of recognition by the principal of similar acts and transactions performed by the agent. * * * As a general rule an agent's authority to bind his principal may not be shown by the agent's acts or declarations." 21 R.C.L. 588, § 36.

It is not shown, in fact it is not claimed, that to the knowledge of the plaintiff Langhoff had ever ratified by silence, acquiescence, or otherwise any unauthorized act of Simmons, and this distinguishes the case from those cited by the Court of Appeal in support of its judgment.

Another well established rule relating to the law of agency is that a person who undertakes to deal with an alleged agent is by the mere fact of agency put upon inquiry and must discover at his peril that the nature of the agency is sufficient in extent to permit the agent to do the proposed act, and that its source can be traced to the will of the alleged principal.

In the case of John Chaffe v. Stubbs et al., 37 La.Ann. 656, this court said, through Chief Justice Burmudez as its organ:

"Whoever deals with an agent is put on his guard by the very fact and does so at his risk. It is his right and duty to inquire into and ascertain the nature and extent of the powers of the agent and to determine whether the act or contract about to be consummated comes within the province of the agency and will or not bind the principal."

This rule is particularly applicable where the alleged ostensible agent is dealt with for the first time, as here. Dodge v. Williams, 47 Pa.Super. 302, Lauer Brewing Co. v. Schmidt, 24 Pa.Super. 396.

For the reasons assigned, the judgment under review is set aside in so far as it holds the defendant Langhoff liable, and the judgment of the district court, which rejected plaintiff's demands against both defendants, is affirmed; plaintiff to pay all costs.

O'NIELL, C. J., absent.