## BORDELON et al. v. CAPERS.

### No. 17111.

Court of Appeal of Louisiana. Orleans.

June 12, 1939.

McCloskey & Moore and Joseph McCloskey, Jr., all of New Orleans, for appellant.

Baldwin, Haspel & Molony and Robert R. Rainold, all of New Orleans, for appellees.

WESTERFIELD, Judge.

This is a suit by Martin Bordelon, Osie Bordelon and Mrs. Uetha Mornhinveg, widow of Emile Bordelon, doing business as Bordelon Motor Company, against Mrs. Martha Haas Capers, on ten promissory notes, each for the sum of twenty-five dollars, dated Opelousas, Louisiana, July 12th, 1937, drawn to the order of Bordelon Motor Company, bearing eight per cent per annum interest from date until paid and ten per cent attorneys' fees and paraphed "Ne Varietur" by Leon S. Haas, Jr., Notary Public, for identification with an act of sale and chattel mortgage covering a used 1933 Ford V–8 Motor Truck.

The notes and mortgage are signed "Estate A. M. Haas by Leon S. Haas, Agent". Mrs. Martha Haas Capers is sued as the sole and only heir of A. M. Haas, on the ground that Leon S. Haas, defendant's undertutor, who signed as agent, was properly qualified to represent the succession under a power of attorney executed by the defendant's tutrix during defendant's minority and alleged to have been ratified by defendant after her emancipation by marriage on June 26th, 1937.

Defendant filed an exception of no cause or right of action and simultaneously an answer to the merits denying the authority of Haas to act for her, or for the succession, and claiming, by way of reconvention, fifty dollars alleged to have been paid on the purchase price of the truck at the time of its purchase.

The trial court overruled the exception of no cause or right of action and rendered judgment for the plaintiffs for the full amount prayed for. Defendant's reconventional demand was dismissed. From this judgment defendant has appealed.

The exception of no cause or right of action is chiefly based upon the following contention:

The power of attorney given the undertutor by the tutrix to represent her in the management of all tutorship affairs was contra bonos mores, illegal and void and vested no authority in the undertutor to bind the estate of the minor, citing Eby v. McLain, 123 La. 138, 48 So. 772, 780.

In the cited case, an undertutor was given a general power of attorney by the tutrix for the administration of the succession affairs. Acting under this authority, the undertutor was guilty of many illegal and dishonest acts, made simulated sales of the real estate, and operated a plantation, owned by the succession, for his personal benefit. Upon attaining majority, the minor instituted suit directly against the undertutor who was then the ostensible owner of many pieces of succession property acquired by dishonest means. The undertutor filed an exception of prematurity based upon the theory that the plaintiff's action should have been against her tutrix and that she could not sue the undertutor, who was acting only as the tutrix's agent, until the tutrix had filed her account. The lower court sustained this exception, but the Supreme Court reversed its judgment and held that a minor could sue a third person in possession of his property without previously suing the tutor. The Supreme Court said:

"* * * The rule invoked by defendant that a subagent employed by an agent is responsible alone to the person who employed him, and that the principal must

look to his own agent (whether a forced legal agent or a conventional agent) for any losses he may have sustained in the administration of his property, has no application to this case. We cannot recognize legally the existence of a conventional agency between the tutor and an undertutor. The tutor cannot appoint an undertutor to act as his agent in the matter of the tutorship, nor can an undertutor legally accept such a position from the tutor. It is the duty of the undertutor to guard the interest of the minors and to call the tutor to account, and he should not place himself in a position which leaves no one to perform that duty, but necessitates, on the contrary, that the tutor should have to call him to account.

"If he undertakes to administer the affairs of a succession under a power of attorney from the tutor, he will, as between himself and the minors, be held to the obligation of a 'negotiorum gestor' and a direct liability for his acts."

In the recent case of Soule v. West, 185 La. 655, 170 So. 26, 29, the Supreme Court referred to the McLain case in the following words:

"The case of Eby v. McLain, 123 La. 138, 48 So. 772, simply holds that a tutor cannot put himself in the position of a person abdicating his duties by vesting the authority of administration in an undertutor."

■■ Under our law the tutor or tutrix cannot delegate her or his authority to administer the minor's affairs to the undertutor or undertutrix, consequently, the power of attorney under which Haas claimed to act was invalid and vested in him no authority to act for the Succession.

Counsel for plaintiff says that "the statement in the Court's opinion (in the McLain case) to the effect that a Tutor cannot appoint an undertutor to act as his agent in the matter of a tutorship is pure dicta. It was not the point upon which the Supreme Court reversed the judgment of the lower court and is therefore not a binding authority in the matter presently before your Honors".

■ We do not agree with this appreciation of the McLain case as is indicated by what we have said, but in any event, if the power of attorney was originally valid and proper, and conferred the necessary authority upon Haas, the undertutor, it was of no effect after the emancipation of defendant by marriage on June 26th, 1937, about fifteen days before the truck was purchased and the notes sued on issued.

■ In Parker v. Ohio Oil Company, 191 La. 896, 186 So. 604, 607, the Supreme Court said:

"Tutorships are created by law. A tutor has no authority, no rights, no duties except those which are conferred and imposed by the law. The relationship which exists between a tutor and his ward is created by law. And, since only minors who are not emancipated are placed under the authority of tutors (Civil Code, Article 246), it follows that acts done after the termination of the legal relationship of tutor and ward are not tutorship acts. A tutor as such, by virtue of the power and authority vested in him by law, acts for, and represents, his ward in all matters in which his ward has an interest. But, when the tutorship is ended as a result of a legal status attained by a former ward, he must thereafter represent himself in matters pertaining to his personal interest, or go unrepresented. His former tutor can no longer represent him legally by virtue of the authority he once had.

"Article 37 of the Civil Code says that:
" 'Minors are those of both sexes, who have not yet attained the age of one and twenty years complete; and they remain under the direction of tutors till that age.'

"In so far as the tutor's authority over the minor and his affairs is concerned, the tutorship, and therefore, the authority conferred by it, is at an end when the minor reaches the age of one and twenty years or is otherwise released, in a manner prescribed by law, of the disabilities attached to minors."

See, also, Louisiana Civil Code, Articles 379 and 3027.

Finally, it is contended that "the allegation that defendant had ratified the power of attorney and authorized Leon S. Haas to continue to manage and operate her farms does not make out a cause of action for recovery on the notes executed by him after her marriage, since the power to buy or to sign notes must be express and special and is not included in a general power to manage and operate real estate."

Under the title of Mandate, we find the following articles of the Civil Code:

Article "2996.—A mandate conceived in general terms, confers only a power of administration.

"If it be·necessary to alienate or give a mortgage, or do any other act of ownership, the power must· be express."

Article "2997.—Thus the power must ·be express and special for the following purposes:

·"To sell or to buy.

"To incumber or hypothecate.

\* \* \*

"To draw or indorse bills of exchange or promissory notes.

\* \* \*."

The authority to buy or to sign notes must be express and special and is not included in a general power to manage and operate real estate. See Folger v. Peterkin, 39 La.Ann. 815, 2 So. 579; Lafourche Transportation Company v. Pugh, 52 La.Ann. 1517, 27 So. 958; Laplante v. Briant, 13 La.Ann. 566; Nugent v. Hickey, 2 La.Ann. 358; ·Robertson v. Levy, 19 La. Ann. 327.

Thus, regardless of whether or not defendant ratified the power of attorney and authorized·Haas to manage her property after her emancipation, there is no claim that she gave him an express power to buy or to sign notes and without such power defendant cannot be bound.

It is well settled that one dealing with an agent or other person in a representative capacity is bound to look to the extent of his powers. The fact that one signs an instrument as agent is notice that such person is vested with limited power beyond which he cannot bind his principal. See, Credit Alliance Corporation v. Centenary College of Louisiana, 17 La.App. 368, 136 So. 130; Herbert v. Langhoff et al., 185 La. 105, 168 So. 508; Calhoun v. David Burk Company, Inc., La.App., 153 So. 568; Parker v. Ohio Oil Company, supra; Section 21, Act No. 64 of 1904 (Uniform Negotiable Instruments Act).

The following language of the Supreme Court in Parker v. Ohio Oil Company, supra, ·is particularly pertinent to the circumstances involved in the present case [191 La. 896, 186 So. 609]:

"Speaking of the duty of a third person to ascertain the extent of an. agent's authority, it is said in Volume II, p. 76, American Jurisprudence, that one dealing with a known agent 'is not authorized under any circumstances blindly to trust the agent's statements as to the extent of his powers; · such person must not act negligently, but must use reasonable diligence and prudence to ascertain whether the agent acts within the scope of his powers'.

"The principle applies with equal, if not greater, force to one who deals with another as 'tutor', especially when the documents, the letters of tutorship, with which he is familiar show that the tutor was confirmed years before the dealings took place.

"What the Supreme Court of Arizona said in Brutinel v. Nygren, 17 Ariz. 491, 154 P. 1042, L.R.A.1918F, ,713, as to the duty of one dealing with an agent is applicable to those dealing with tutors. We· quote (page 1045):

" 'The mere fact that one is dealing with an agent, whether the agency be general or special, should be a danger signal, and like a railroad crossing suggests the duty to "stop, look, and listen," and if he would bind.the principal is bound to ascertain, not only the fact of agency, but the nature and extent of the authority, and in case either is controverted, the burden of proof is upon him to establish it. In fine, he must ·exercise due care and caution in the premises.'

"Originally, S. R. Parker was authorized by virtue of the tutorship to collect these rentals. The law gave him authority to administer the affairs of the minors. But that ·authority ceased when the minors reached the age of majority. His legal mandate was then at an end. It stood revoked by virtue of the law itself. The administration thereafter was a matter of sufferance on the part of these plaintiffs."

From the foregoing it is apparent that plaintiffs cannot recover on the notes sued on.

The claim in reconvention for $50 cannot be allowed. If any money belonging to the succession has been used to pay a debt for which the succession is not liable, the tutor or undertutor, or perhaps both, can be called to account, but not an innocent third person who has mistaken the authority of the agent to contract the obligation.

For the reasons assigned the judgment appealed from is annulled, avoided and re-- versed insofar as it allows recovery on the main demand and it is now ordered that

there be judgment herein dismissing both the main and the reconventional demands.

Reversed.